■ DONALD A. NARDIELLO et al., Appellants, v MARTIN STONE et al., Defendants, and ROBERT P. AMBROSINI et al., Respondents. [652 NYS2d 647] —Mercure, J. Appeal from an order of the

---

Supreme Court (Viscardi, J.), entered November 16, 1995 in Essex County, which, *inter alia*, partially granted motions by defendants Robert P. Ambrosini, Richard M. Feldman and Philip Saunders to dismiss the complaint against them for, *inter alia*, failure to state a cause of action.

This action has its genesis in the 1988 sale of the assets of WIRD, Inc., which operated AM and FM radio broadcast stations in the Village of Lake Placid, Essex County, to Adirondack Network Systems, Inc. (hereinafter ANS). Plaintiffs are the sole shareholders, directors and officers of WIRD, and defendants Robert P. Ambrosini, Richard M. Feldman and Philip Saunders (hereinafter collectively referred to as defendants) are shareholders of ANS. In connection with the 1988 sale, WIRD and ANS entered into an October 24, 1988 "Asset Purchase Agreement", under the terms of which ANS gave its promissory notes for $600,000 (executed in favor of WIRD or plaintiffs) and $150,000 (executed in favor of plaintiffs) in partial satisfaction of the purchase price. ANS and WIRD also entered into a "Security Agreement" granting WIRD a security interest in the assets transferred to ANS, among others, and providing for WIRD's recovery of counsel fees, expenses and disbursements in the event it was required to institute collection proceedings. Finally, ANS' shareholders, including defendants, entered into a December 1988 "Pledge Agreement" with WIRD, whereby they pledged their shares of stock in ANS as further security for ANS' obligations under the promissory notes. That agreement made no provision for recovery of counsel fees, expenses, disbursements or other similar damages in the event of the shareholders' breach of the contract.

In November 1991, ANS defaulted in payment on the promissory notes and in July 1992 plaintiffs instituted an action against ANS and its shareholders to foreclose the security interest created by virtue of the Security Agreement. In October 1992, Supreme Court granted judgment upon default in favor of plaintiffs, awarding them sole and exclusive possession and ownership of the collateral pledged under the Security Agreement. Subsequently, plaintiffs brought a CPLR article 76 proceeding against ANS' shareholders, including defendants, seeking to compel delivery of the shares of stock in ANS pursuant to the Pledge Agreement. Supreme Court granted judgment in favor of plaintiffs, and the shareholders delivered their ANS stock to plaintiffs on August 27, 1993. By the time of commencement of the present action in November 1994, plaintiffs had received approximately $550,000 in cash from ANS, had retaken possession of all of the assets trans-

ferred to ANS under the Asset Purchase Agreement, together with improvements thereon, and had obtained possession and control of all other assets of ANS and the stock certificates of all of its shareholders.

In this action, brought (as relevant to this appeal) against the shareholders of ANS, plaintiffs allege their entitlement to further damages as the result of conduct on the part of ANS and, to a far lesser extent, its shareholders, that is alleged to have frustrated or impeded plaintiffs' ability to assert their rights under the various contracts. Among the acts complained of are (1) ANS' acquisition and cancellation of the stock of one of its shareholders and the addition of two other shareholders, (2) the amendment of ANS' certificate of incorporation so as to increase the number of shares of common stock that were authorized to be issued, (3) ANS' failure to make payments on the notes, and (4) various Bankruptcy Court proceedings initiated by ANS, including the filing of a chapter 11 (11 USC) petition, the conversion to a chapter 7 (11 USC) proceeding, subsequent reconversion to a chapter 11 proceeding, and an unsuccessful effort to extend the automatic stay. The only allegations properly relating to conduct of the shareholders (as opposed to conduct of ANS that plaintiffs choose to attribute to its shareholders) charge them with failing to timely deliver their capital stock in ANS in accordance with the terms of the Pledge Agreement. Plaintiffs' damages are alleged to have arisen as the result of the necessity to engage bankruptcy counsel for "a course of extensive and expensive proceedings and negotiations in an effort to resolve the issues raised in the bankruptcy proceedings" and, in furtherance of plaintiffs' effort to gain control of ANS by causing a conversion of the chapter 7 liquidation proceeding to a chapter 11 reorganization, their payment of $100,000 in Bankruptcy Court administration fees and expenses and claims of unsecured creditors, and additional costs and expenses for Federal Communications Commission counsel, bankruptcy counsel and accounting counsel.

In our view, Supreme Court did not err in entirely dismissing plaintiffs' first, second, third, fourth, sixth and eighth causes of action against defendants, alleging various contract and tort theories in support of their claim for compensatory and punitive damages. To the extent that plaintiffs may have standing as transferees of all of WIRD's assets, including its rights under the Pledge Agreement, their rights are nonetheless limited to those specifically arising under that agreement, the only one executed by defendants. As such, and in the

absence of any cognizable independent duty on the part of shareholders, we agree with defendants that plaintiffs' third, fourth and eighth causes of action, alleging prima facie tort, negligence and fraud, merge into the cause of action for breach of contract (*see, Quail Ridge Assocs. v Chemical Bank*, 162 AD2d 917, 919, *lv dismissed* 76 NY2d 936; *see also, Fort Ann Cent. School Dist. v Hogan*, 206 AD2d 723, 724-725; *Stuart v WMHT Educ. Telecommunications*, 195 AD2d 671, 672).

In addition, plaintiffs' first and second causes of action, alleging that the shareholders' conduct caused them to "incur[ ] costs and expenses directly related to the breach of the Pledge Agreement" and frustrated plaintiffs' entitlement to the "benefit of the bargain for the business transaction they intered [*sic*] into", can be reasonably viewed as nothing other than a claim for reimbursement of counsel fees and expenses incurred in connection with plaintiffs' effort to collect on ANS' promissory notes and to enforce the security interest granted by ANS. In sharp contrast to the Pledge Agreement, which makes no provision for expenses incurred in collection, the Security Agreement, forming the basis for plaintiffs' 1992 action, provides for WIRD's entitlement to "costs and expenses of collection, storage, custody, sale or other disposition and delivery (including legal costs and attorneys' fees) and all other charges against the Collateral" out of the proceeds of sale thereof and, in the event the proceeds of disposition of the Collateral may be insufficient to pay all of ANS' obligations in full, ANS' liability for any deficiency.

Under the circumstances, we agree with defendants that plaintiffs, having prosecuted the 1992 foreclosure proceeding to judgment against ANS and its shareholders, are collaterally estopped from now seeking damages directly related to ANS' breach of its promissory notes and expenses incurred by WIRD and plaintiffs in collecting on them (*see, O'Brien v City of Syracuse*, 54 NY2d 353, 357-358; *Lanzano v City of New York*, 202 AD2d 378, 379, *lv denied* 83 NY2d 760). In addition, because plaintiffs' choice to retain ownership and possession of the collateral precluded a determination of its value and, thus, the extent to which plaintiffs may have already recovered the sums due them under the Security Agreement (or whether, in fact, there exists a surplus), they are estopped from now contending that they have not been reimbursed for all expenses of collection, including those sought in this action.

Also, the Pledge Agreement having made no provision for counsel fees, plaintiffs have no valid claim therefor (*see*, UCC 9-504 [1]; *Hunt v Sharp*, 85 NY2d 883, 885). We are unper-

suaded by plaintiffs' reliance upon *Shindler v Lamb* (25 Misc 2d 810, *affd without opn* 10 AD2d 826, *affd without opn* 9 NY2d 621). Because the purported third-party wrongdoers, ANS' shareholders, are the legal or practical equivalent of ANS, the narrow exception of *Shindler* is unavailable (*see*, *Hunt v Sharp*, *supra*, at 885-886).

We disagree with Supreme Court's determination only to the extent that it did not dismiss plaintiffs' fifth cause of action, alleging tortious interference with plaintiffs' business operation, in its entirety. The alleged assignment of WIRD's rights under the Pledge Agreement grants plaintiffs no standing to assert such a claim. As a final matter, we perceive no merit to plaintiffs' equity cause of action and, based upon our determination that none of plaintiffs' claims state a cause of action, the demand for punitive damages must fail as well (*see*, *Quail Ridge Assocs. v Chemical Bank*, 162 AD2d 917, 921, *supra*; *Rock v Sear-Brown Assocs.*, 136 AD2d 894, 895).

In view of the foregoing, we need not discuss the several other meritorious arguments in favor of dismissal of plaintiffs' claims against defendants.

Cardona, P. J., White, Casey and Carpinello, JJ., concur. Ordered that the order is modified, on the law, with one bill of costs to defendants Robert P. Ambrosini, Richard M. Feldman and Philip Saunders, by reversing so much thereof as partially denied said defendants' motion to dismiss the complaint against them; motion granted in its entirety and complaint dismissed against said defendants; and, as so modified, affirmed.