Daniel CALCUTTI, Plaintiff,

v.

SBU., INC., The Private Bank and Trust Company, Richard G. Monaco, Esq., The Travelers Group, The Travelers Companies and Charter Oak Fire Insurance Co., Defendants.

No. 02 CIV. 0041.

United States District Court, S.D. New York.

Sept. 18, 2002.

Ronald W. Weiner, Stenberg & Cavaliere, LLP, White Plains, NY, Jonathan A. Wexler, David P. Doyle, James V. Garvey, Vedder, Price, Kaufman & Kammholz, New York City, James E. Rocap, III, Ellen Fels, Berkman, Baker Botts, LLP, Washington, DC for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Daniel Calcutti commenced this action in state court alleging claims of breach of contract, negligence, negligent misrepresentation, conversion, and contempt against The Travelers Group, The Travelers Companies, and Charter Oak Fire Insurance Co. (collectively, "Travelers"), and the various other named defendants. Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1338, and Travelers moved to dismiss the complaint pursuant to the Federal Rules of Civil Procedure 12(b) and 9(b). The Court gave notice to the parties, and converted the motion into one for summary judgment under Federal Rule of Civil Procedure 56. (*See* Order, dated June 14, 2002, at 3.) For the reasons discussed below, the Court grants Travelers' motion.

### I. BACKGROUND

The Court assumes the reader's familiarity with the facts underlying this case as summarized in its prior Decision and Order, dated September 13, 2002 (the "September Decision"). The following summary identifies the particular facts put at issue by Travelers' motion.

Calcutti's claims in this case arise out of a litigation he filed in state court concerning injuries he incurred as a minor (the "State Action"). (*See generally* Verified Complaint, dated November 16, 2001 (the "Compl."), attached as Ex. A to the Affirmation of Roland T. Koke, dated April 19, 2002 ("Koke Aff.").) Calcutti, through his parents as legal guardians, entered a settlement agreement with the defendants in the State Action whereby he "release[d] [Travlers] of and from any and all past, present, and future claims" arising out of Calcutti's injury. (Settlement Agreement, dated June 20, 1995 and attached as Ex. C to the Koke Aff., at ¶¶ C, 1.) Travelers agreed to establish a trust, funded with United States Treasury Bonds, and intended to fund annuity payments to Calcutti of: (1) $20,000 to be paid on June 22, 2001 upon Calcutti's twenty-first birthday; (2) $918.75 monthly from June 22, 2001 through May 22, 2015; and (3) $115,000 on June 22, 2015. (*See* Settlement Agreement, at ¶ 3 (the "Annuity").) Under the Settlement Agreement, Calcutti agreed that Travelers would have the right to assign its duties and obligations to SBU, thereby fully discharging and releasing Travelers of its obligations to Calcutti. (*See id.*, at ¶ 2.)

On the same day, again through his parents, Calcutti signed an agreement assigning all of Travelers' obligations under the Settlement Agreement to SBU. (*See* Assignment Agreement, dated June 20, 1995, attached as Ex. D to the Koke Aff. (the "Assignment Agreement"), at ¶¶ C, 1.) Under the Assignment Agreement, the assignment would be complete once SBU received from Travelers "good funds" in an amount sufficient to fund the Annuity. (*See id.*, at ¶ 2 (the "Annuity Payment").)

The New York State Supreme Court, New York County, approved of the Settlement and Assignment Agreements. (*See*

Infant's Compromise Order, dated June 21, 1995 (the "ICO"), attached as Ex. B. to the Koke Aff., at 1–3.) The ICO required Croton Park Colony and its insurer, Travelers, to make an up-front payment of $95,000 as follows: (1) $70,000 to Richard G. Monaco, Esq. for attorney fees; (2) $17,000 to American International Recovery for discharge of a lien; (3) $4,799 to Dr. C. Andrew Salzburg for medical services; (4) $3,201 to Calcutti to purchase a computer. (*See id.*, at 3 (the "ICO Payment").)

Travelers submitted the statement of its Chief Financial Officer, who stated that his review of Travelers' books and records revealed that the ICO and Annuity Payments were made. (*See* Declaration of Anthony Torsiello ("Torsiello Decl."), dated June 4, 2002, at ¶¶ 2 – 4. Torsiello provided copies of the cancelled checks that show the ICO Payments were paid in full in July of 1995. (*See* Copies of Checks, attached as Ex. A to the Torsiello Decl. (the "Checks").) Further, on February 24, 1995 Travelers endorsed a check in the amount of $115,000 to SBU, which represents full payment of the Annuity Payment. From the notations on the checks, it appears that SBU received and deposited the funds. (*See* Checks.) Later, SBU represented that it purchased $296,000 worth of United States Treasury Bonds to cover the total annuity payments of $289,000 owed to Calcutti over the next several years. (*See* Letter from SBU to Richard G. Monaco, dated March 20, 1997 (the "SBU Letter", attached as Ex. G to the Plaintiff's Affirmation in Opposition, dated May 23, 2002.) Thus, SBU represented that Travelers had satisfied the Annuity Payment and that the ICO and Settlement Agreement obligations had been assigned to it.

In the instant case, Travelers filed a motion to dismiss the complaint pursuant to the Federal Rules of Civil Procedure 12(b) and 9(b). (*See generally* Defendant's Memorandum of Law, dated April 19, 2002.) In his opposition to the motion to dismiss, Calcutti introduced documents that he did not refer to or incorporate in the Complaint. (*See* Memorandum of Law in Opposition to the Motion by Defendant Travelers to Dismiss the Complaint, dated May 22, 2002 ("Pl.Mem."), at 1–2.) In reply, Travelers introduced more documents outside the pleadings. (*See* Reply Memorandum of Law in Further Support of Travelers' Motion to Dismiss the Complaint, at 3.) The Court provided the parties with notice that it would convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and gave the parties an opportunity to conduct discovery and supplement the record. (*See* Order, dated June 14, 2002.) Neither party elected to supplement the record any further.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

Where it appears beyond doubt that the non-moving party can prove no set of facts that would entitle it to relief, a district court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994). The Court looks only to matters included in the pleadings on such a motion. *See* Fed.R.Civ.P. 12(b); *see also Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991).

If matters outside the pleadings are presented to the Court on a motion to dismiss pursuant to Rule 12(b)(6), the Court may either exclude the extrinsic documents or convert the motion to one for summary judgment, granting the parties time for additional discovery and allowing them to

submit the additional materials necessary for a Rule 56 motion. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154 (2d Cir.2002) (citations omitted). To withstand a motion for summary judgment, the non-moving party must present sufficient evidence of genuine issues of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505. All facts in the record must be viewed in the light most favorable to the non-moving party. *See id.* at 247–250, 106 S.Ct. 2505.

This Court elected to convert the motion to dismiss into one for summary judgment and granted the parties additional time for discovery and leave to submit the additional papers necessary to support the motion. (*See* Order, dated June 14, 2002, at 2.) Therefore, Travelers' motion will be granted if no genuine issue of material fact exists.

### B.  *BREACH OF CONTRACT*

Travelers argues that Calcutti's claim for breach of contract should be dismissed because it discharged all its obligations under the ICO, Assignment Agreement and Settlement Agreement. Calcutti opposed the motion on the ground that there is a question of fact whether Travelers actually funded the Settlement Agreement, and whether SBU received "good funds". (*See* Pl.Mem. at 5–6.) Further, Calcutti asserted that Travelers had not proven that Calcutti released them from further liability. (*See id.*) In reply, Travelers submitted copies of the checks by which it claims to have performed the ICO and Settlement Agreement. (*See* Checks.)

Travelers provided copies of four endorsed and deposited checks that correspond with its ICO Payment obligation.

Thus, Travelers performed its obligation under the ICO.

Regarding the Annuity Payment, the Assignment Agreement stated that SBU would assume all of Travelers' obligations to make annuity payments upon receipt of "good funds." At that point, Travelers would be released from obligation to make annuity payments. (*See* Assignment Agreement, at ¶¶ 1, 1(a); ICO, at 4.) Calcutti himself states that Travelers' release and discharge from obligation under the Settlement Agreement was conditioned upon fulfillment of the Annuity Payment obligations. (*See* Pl.Mem., at 9; Checks.)

■ The endorsed and deposited check for $115,000 demonstrates that Travelers performed its obligation by providing SBU with "good funds." Thus, the Assignment Agreement became binding and released Travelers from any further obligation under the Settlement Agreement. (*See* Assignment Agreement, at ¶ 2; Settlement Agreement at ¶ 1.) Accordingly, Travelers' motion for summary judgment is granted as to Calcutti's breach of contract claim.

### C.  *TORT CLAIMS*

■ A party's breach of contract cannot form the basis for a tort claim "unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193–94 (1987) (citations omitted). This duty must arise from circumstances not constituting the elements of the contract, but from circumstances extraneous to it. *See Rich v. New York Cent. & Hudson Riv. R.R. Co.,* 87 N.Y. 382, 398 (1882). Therefore, in general, claims arising from a breach of contract will not support a tort claim unless an independent duty exists.

### 1. *Negligence*

Travelers argues that Calcutti cannot recover his purely economic loss in a negligence action, especially because Calcutti cannot identify a legal duty separate from the contractual duty at issue in the breach of contract claim. Calcutti argues that an independent duty to insure that SBU was reputable, ethical, and competent in fulfilling its fiduciary duties existed. (*See* Pl. Mem., at 9–10.)

In general, to prevail on a negligence claim a plaintiff must establish: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of that duty; (3) a resulting injury. *See Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531, 535 (1981). When a negligence claim grows out of a contract claim, an independent duty that springs from circumstances outside the contract must exist to sustain the negligence claim. *See Clark–Fitzpatrick*, 521 N.Y.S.2d 653, 516 N.E.2d at 193–94. In the absence of any independent duty, a negligence claim merges into the cause of action for breach of contract. *See Nardiello v. Stone*, 235 A.D.2d 681, 652 N.Y.S.2d 647 (3d Dep't 1997) (holding that plaintiff shareholders' action for negligence arising out of a stock assignment by defendant corporation could not stand because the underlying claim was breach of contract).

An independent duty may arise, for example, if there is a public interest in seeing the contractual obligation performed, or if the defendant fraudulently induced the plaintiff to enter into the contract. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767–68 (1995). The instant case does not involved such duty. The Complaint does not identify a separate legal duty. (*See* Compl., at ¶¶ 126–30.) Further, Calcutti failed to introduce evidence showing that any duty existed be-

yond the contractual relationship established by the Settlement and Assignment Agreements. Thus, Travelers had no obligations to Calcutti beyond the terms of the Settlement Agreement and the Assignment Agreement and Calcutti's negligence claim merges into the breach of contract claim, which the Court already dismissed. Thus, the Court grants summary judgment dismissing Calcutti's negligence claim.

### 2. *Negligent Misrepresentation*

Travelers motion for summary judgment against Calcutti's negligent misrepresentation claim rests on the same grounds as its motion against the negligence claim. Likewise, Calcutti defends these two claims on the same grounds as well.

To establish a claim of negligent misrepresentation under New York law, a plaintiff must prove that: (1) defendant, as a result of a special relationship, failed to give correct information; (2) defendant should have known that the false representation was incorrect; (3) defendant knew the information was to be used by plaintiff for a serious purpose; (4) plaintiff intended to rely and act upon it; and (5) plaintiff reasonably relied on the information to his or her detriment. *See Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir.2000) (citations omitted). "The tort of negligent misrepresentation cannot be independently asserted within the context of a breach of contract action unless a special relationship exists between the parties, and the alleged misrepresentation concerns a matter which is extraneous to the contract itself." *Alamo Contract Builders, Inc. v. CTF Hotel Co.*, 242 A.D.2d 643, 663 N.Y.S.2d 42, 43 (2d Dep't 1997). This special relationship "requires a closer degree of trust than an ordinary business relationship." *Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792, 736 N.Y.S.2d 737, 741 (3d Dep't 2002) (citations omitted).

Calcutti asserts that Travelers had a duty to ensure that SBU was reputable, ethical, and competent in fulfilling its fiduciary duties. (*See* Pl.Mem., at 9; Compl., at ¶ 129.) However, Calcutti did not explain how this duty allegedly arose in law or in fact. As discussed above, *see supra*, discussion at Part II.C.2, Travelers and Calcutti had no relationship existing outside the ICO, Settlement and Assignment Agreements. Therefore, Calcutti's claim for negligent misrepresentation does not survive summary judgment.

3. *Conversion*

Travelers argues that it did not convert any funds, rather, it fulfilled its obligation under the ICO, Assignment and Settlement Agreements. Calcutti claims that Travelers had or received into its possession money belonging to him and withheld or converted the money without authorization, or authorized others to receive this money into their possession. (*See* Compl., at ¶ 144.)

[redacted] To show conversion Calcutti must prove that Travelers exercised unauthorized dominion over personal property in interference with Calcutti's legal title or superior right of possession. *See, e.g., Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 590 N.Y.S.2d 201, 202 (1st Dep't 1992). A plaintiff must allege acts that are unlawful or wrongful, rather than mere violations of contractual rights, to state a claim for conversion. *See Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982); *see also Fraser v. Doubleday & Co.,* 587 F.Supp. 1284, 1288 (S.D.N.Y.1984).

[redacted] Calcutti has not alleged, or introduced, evidence showing any unlawful or wrongful acts by Travelers that distinguish his conversion claim from his breach of contract claim. As such it is not cognizable under New York law and the Court grants Travelers' motion for summary judgment dismissing Calcutti's conversion claim.

D. *CONTEMPT*

Travelers argues that this Court lacks jurisdiction over a claim of contempt based on New York law and the ICO. In his contempt claim, Calcutti alleges that Travelers failed to abide by the terms of the ICO by failing to ensure that the Annuity Payments were funded by the purchase of United States Bonds or to provide him with information including: a copy of the annuity trust agreement, the Assignment Agreement, and the registration numbers of the Bonds to Calcutti. (*See* Compl., at ¶ 138.)

[redacted] Under New York law: "A court of record has power to punish ... a neglect or violation of duty ... by which a right or remedy of a party to a civil action ... may be defeated, impaired, impeded, or prejudiced." N.Y.Jud.Law § 753(A). As the Court discussed in its September Decision, New York law empowers a "court of record" to punish for contempt. Only those courts enumerated by statute constitute courts of record. *See* N.Y.Jud.Law § 2(11) ("All courts other than those specified in this section are courts not of record."). A United States District Court is not a court of record under the applicable state law. *See id.* The alleged contempt Calcutti seeks to punish arose not in the civil action pending in this Court, but in the underlying State Action. Therefore, this Court lacks jurisdiction to punish, or adjudicate, a § 753 contempt claim. The Court dismisses the claim for lack of jurisdiction.

## III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that Travelers' motion for summary judgment is granted; and it is finally

**ORDERED** that defendants The Travelers Group, The Travelers Companies and Charter Oak Fire Insurance Co., be dismissed from the case.

**SO ORDERED.**