**Daniel CALCUTTI, Plaintiff,**

v.

**SBU, INC., the Private Bank and Trust Company, Richard G. Monaco, Esq., the Travelers Group, the Travelers Companies and Charter Oak Fire Insurance Co., Defendants.**

**Richard G. Monaco, Third–Party Plaintiff,**

v.

**BDO Seidman, LLP, Third–Party Defendant.**

**No. 02 Civ. 0041(VM).**

United States District Court, S.D. New York.

July 23, 2003.

Ronald W. Weiner, Steinberg & Cavaliere, LLP, White Plains, NY, Jonathan A. Wexler, David P. Doyle, James V. Garvey, Vedder, Price, Kaufman & Kammholz, New York City, James E. Rocap, III, Ellen Fels Berkman, Baker Botts, LLP, Washington, DC, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Daniel Calcutti ("Calcutti") commenced this action in New York state court alleging claims of breach of contract, negligence, negligent misrepresentation, conversion, and contempt against Richard G. Monaco ("Monaco") and the various other named defendants. Monaco removed the matter to this Court pursuant to 28 U.S.C. § 1338. Monaco brought a third-party complaint against BDO Seidman, LLP ("BDO"), pursuant to Fed.R.Civ.P. 14, claiming a right to contribution from BDO for any damages awarded by verdict or judgment to Calcutti from Monaco. Currently before the Court is BDO's motion to dismiss the third-party complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim. For the reasons

discussed below, BDO's motion is DE-NIED.

## I. *BACKGROUND*

The facts underlying this case are summarized in two prior Decisions and Orders of this Court, one dated September 13, 2002 (the "Monaco Decision"),[1] dismissing a number of Calucutti's claims against Monaco, and the other dated September 18, 2002 (the "Travelers Decision"),[2] dismissing the complaint ("Complaint" or "Compl."), dated November 16, 2001, in its entirety as against defendants The Travelers Group, The Travelers Companies and Charter Oak Fire Insurance Co. Familiarity with the underlying events as described in those rulings is assumed. In the interest of clarity, the following summary identifies briefly the facts surrounding Monaco's instant motion.

Calcutti was allegedly injured while present on property that was owned by Croton Park Colony, Inc. and insured by The Travelers Group. The injury, which occurred while Calcutti was a minor, resulted in a nerve transplant, partial paralysis, pain and scarring. Calcutti retained Monaco to pursue his legal claims. On or about June 20, 1995, Monaco negotiated a settlement for Calcutti with Croton Park, the original defendant in an action Calcutti brought in the New York State Supreme Court, New York County (the "Underlying Action"). Calcutti entered into a $210,000 settlement of the Underlying Action. On July 21, 1995, the New York court approved the settlement, which was memorialized in an Infant Compromise Order ("ICO"), dated July 21, 1995. In accordance with the terms of the ICO, it was agreed that a trust would be established to fund the settlement. The duties and obligations under the settlement were ultimately assigned to SBU. Through his continuing contact with Calcutti and SBU, Monaco remained involved in the administration of the ICO and the disbursement of settlement funds. Calcutti alleges that he never received any settlement payments from SBU.

In the Monaco Decision, the Court dismissed Calcutti's claims against Monaco for breach of contract, fraud, and conversion, with leave to amend the Complaint by October 15, 2002, and dismissed Calcutti's claim against Monaco for contempt, without leave to amend. As Calcutti has not since amended the Complaint, only claims for negligence, negligent misrepresentation and legal malpractice remain as to Monaco. As against SBU, Inc. ("SBU") and The Privatebank and Trust Company ("Privatebank"), Calcutti asserted claims for fraud, conversion, breach of contract and contempt, as well as negligence and negligent misrepresentation. Privatebank subsequently settled the claims against it.

Monaco's third-party complaint (the "Third–Party Complaint"), dated October 9, 2002, alleges that BDO was SBU's accountant, and that, as such: (1) BDO knew that SBU was engaged in the business of structuring personal injury settlements through the establishment of irrevocable trusts funded with United States Treasury obligations, including the settlement of the Underlying Action; (2) BDO knew that SBU failed to purchase United States Treasury obligations, as required under the terms of the structured settlements, for twenty-two trusts under SBU's supervision, one of which was Calcutti's structured settlement trust; and (3) BDO knew that SBU's use of settlement funds for

---

**1.** The Monaco Decision is reported as *Calcutti v. SBU, Inc.,* 224 F.Supp.2d 691 (S.D.N.Y. 2002).

**2.** The Travelers Decision is reported as *Calcutti v. SBU, Inc.,* 223 F.Supp.2d 517 (S.D.N.Y.2002).

purposes other than the payment of trust obligations constituted fraud, conversion, theft or felony.

Moreover, Monaco alleges that in December 1997, BDO became aware, through Stephen R. Krause ("Krause"), its partner responsible for the SBU accounts, that SBU had improperly failed to report to the IRS taxable income from settlement funds invested in a grocery store chain, as opposed to the required United States Treasury obligations. Thereafter, according to Monaco, on January 8, 1998, in response to an IRS request, Krause submitted certain documents to the IRS and "upon information and belief, in his submission Krause failed to inform the IRS of information that was material to the determination of [SBU] income for tax year 1995," specifically, that SBU had not purchased United States Treasury obligations with the settlement funds received but instead used that money to purchase and operate grocery stores. (Third–Party Complaint ¶ 20.) Monaco further alleges that BDO knew that the failure to inform the IRS of the alleged income affected the interests of settlement clients, such as Calcutti, and that thereby BDO "knowingly conspired with [SBU] by voluntarily agreeing to assist, explicitly or implicitly, and substantially did assist [SBU's] tortious conversion of funds belonging to or for the benefit of Calcutti ... by conduct including, but not limited to, concealing the fact that [SBU] had received settlement funds but had failed to purchase United States Treasury obligations intended solely to fund structured settlement arrangements." (*Id.* ¶ 26.)

On the basis of these allegations, Monaco argues that if Calcutti is entitled to recover damages against him, Monaco is entitled to contribution from BDO on account of BDO's actions in aiding and abetting SBU's alleged tortious conversion of Calcutti's settlement funds.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the pleader. *Leatherman v. Tarrant County Narcotics and Coordination Unit,* 507 U.S. 163, 165, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Dismissal under this Rule is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). The issue that must be determined by the Court "is not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, where it appears beyond doubt that the non-moving party can prove no set of facts that would entitle it to relief, a district court may grant a Rule 12(b)(6) motion to dismiss. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994).

The Court looks only to matters included in the pleadings when considering a motion to dismiss. *See* Fed.R.Civ.P. 12(b); *see also Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991). If matters outside the pleadings are presented to the Court on a Rule 12(b)(6) motion to dismiss, the Court may either exclude the extrinsic documents or convert the motion to one for summary judgment pursuant to Rule 56, granting the parties time for additional discovery and allowing them to submit the additional

materials necessary for a Rule 56 motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002) (citations omitted).

## B. *CONTRIBUTION UNDER THEORY OF AIDING AND ABETTING*

■ Monaco argues that, under the theory of concerted-action liability, if judgment were entered against him, he would be entitled to contribution from BDO because BDO could be found liable to Calcutti. Specifically, Monaco argues that BDO lent aid and encouragement to SBU in SBU's tortious conduct toward Calucutti.

Essentially, Monaco claims that he is entitled to contribution from BDO because BDO aided and abetted the alleged conversion committed by SBU, not for BDO's concerted action with Monaco, who is only being sued for malpractice and negligence. In the Third–Party Complaint, Monaco's allegations solely relate to BDO's concerted action with SBU and indicate no relationship between BDO and Monaco whatsoever, other than that the alleged injury to Calcutti—the failure to receive settlement payments—was allegedly the result of both the fraud, negligence and conversion committed by SBU, allegedly aided and abetted by BDO, and the alleged negligence committed by Monaco.

■ Under New York law, which the Court presumes applies to the contribution claim since it is the state law cited by the parties with regard to the aiding and abetting cause of action, *see International Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 423 (2d Cir.2002), claims for contribution may be asserted "between two or more persons who are subject to liability for the same personal injury, injury to property or wrongful death." N.Y. C.P.L.R. § 1401 (McKinney 2003). New York courts also hold that " 'contribution is available whether or not the culpable parties are allegedly liable for the injury un-

der the same or different theories' " and that "contribution 'may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors.' " *Steed Finance LDC v. Laser Advisers, Inc.*, 258 F.Supp.2d 272, 283 (S.D.N.Y. 2003) (quoting *Raquet v. Braun*, 90 N.Y.2d 177, 659 N.Y.S.2d 237, 681 N.E.2d 404, 407 (1997)).

Accordingly, to the extent that Monaco is found liable for Calcutti's failure to receive settlement payments from SBU, if a valid claim for contribution is stated in the Third–Party Complaint for aiding and abetting the same injury to Calcutti, BDO could be liable for contribution to Monaco. This is true despite the entirely different theories of liability asserted against Monaco by Calcutti and against BDO by Monaco, as well as the fact that the Third–Party Complaint does not even allege that Monaco and BDO acted jointly.

■ In order to state a claim against BDO for aiding and abetting the alleged common law conversion committed by SBU, Monaco must allege: (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. *See Morin v. Trupin*, 711 F.Supp. 97, 112 (S.D.N.Y.1989); *Oei v. Citibank*, 957 F.Supp. 492, 520 (S.D.N.Y.1997); *Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (1994); *see also IIT v. Cornfeld*, 619 F.2d 909, 921 (2d Cir.1980) (elements of aiding and abetting as applied in securities fraud context).

■ BDO does not contest that a primary violation by SBU, as well as BDO's knowledge of this violation, is sufficiently alleged in the Third–Party Complaint. Rather, BDO argues that Monaco can not establish the third element of aider and abettor liability: that BDO provided "substantial assistance" to SBU. Because the allegations in the Third–Party Complaint

amount to assertions by Monaco that BDO aided and abetted SBU by failing to disclose or otherwise prevent SBU's wrongdoings, BDO argues that the mere inaction alleged does not rise to the level of substantial assistance necessary absent a showing by Monaco that BDO had a duty to disclose this information.

▮ It is well settled that without an independent duty to disclose, mere inaction does not amount to substantial assistance for purposes of determining aider and abettor liability. *See, e.g., National Westminster Bank USA v. Weksel,* 124 A.D.2d 144, 511 N.Y.S.2d 626, 629 (1st Dep't 1987). ("We know of no case where mere inaction by a defendant has been held sufficient to support aider and abettor liability for fraud.") Moreover, professionals such as lawyers and accountants do not have a duty to "blow the whistle" on their clients. *See Morin,* 711 F.Supp. at 113 ("'Neither lawyers nor accountants are required to tattle on their clients in the absence of some duty to disclose.'") (quoting *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 497 (7th Cir.1986)); *King v. George Schonberg & Co.,* 233 A.D.2d 242, 650 N.Y.S.2d 107, 108 (1st Dep't 1996) ("[I]n the absence of a confidential or fiduciary relationship between plaintiff and her brother's attorneys giving rise to a duty of disclosure, the silence of the attorneys did not amount to the substantial assistance that is a required element of aider and abetter liability."); *Alpert v. Shea, Gould, Climenko & Casey,* 160 A.D.2d 67, 559 N.Y.S.2d 312, 316 (1st Dep't 1990); *see also Schatz v. Rosenberg,* 943 F.2d 485, 493 (4th Cir. 1991) ("attorneys have no duty to 'blow the whistle' on their clients.")

The precise "inaction" alleged by Monaco is that "in response to an IRS request for documents concerning SBU's activities, BDO submitted documents to the IRS but failed to inform the IRS of information that was material to the determination of income for tax year 1995 ...", (Third–Party Complaint ¶ 20); and therefore, BDO "substantially did assist [SBU's] tortious conversion of funds belonging to or for the benefit of Calcutti and others similarly situation by conduct including, but no limited to, concealing the fact that [SBU] had received settlement funds but had failed to purchase United States Treasury obligations intended solely to fund structured settlement arrangements." (Third–Party Complaint ¶ 26).

Despite Monaco's open-ended pleading in the Third–Party Complaint, specifically not limiting the form of the substantial assistance provided by BDO, it is essential that the manner in which BDO allegedly provided substantial assistance to SBU be laid out in the Third–Party Complaint. Without indicating the form of BDO's alleged aid to SBU, Monaco does not give proper notice to BDO of the grounds for his aiding and abetting claim.[3] *See* Fed. R.Civ.P. 8(a)(2); *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,* 893 F.Supp. 285, 291 (S.D.N.Y.1995) (the pleading must "contain a 'short and plain statement of the claim' sufficient to put the [adverse party] on notice of the grounds for which the [claimant] seeks relief."); 2A James W. Moore et al., *Moore's Federal Practice* ¶ 8.13 (2d ed.1995). Therefore, in determining the sufficiency of Monaco's aiding and abetting claim, the Court will only consider BDO's alleged failure to disclose information to the IRS.

**3.** However, since Monaco's Third–Party Complaint survives the instant motion to dismiss, the Court does not rule out the possibility that during discovery Monaco may uncover another basis for alleging an act that constituted

substantial assistance to SBU, including, but not limited to, the possibility of a duty to disclose to some entity other than the IRS. At that point, Monaco can request leave to amend the Third–Party Complaint.

■ The Court concludes that BDO may have had a duty to disclose information to the IRS, which was allegedly breached by BDO's incomplete submission. BDO's duty to disclose information requested by the IRS, in an accurate and complete manner, stems not from any fiduciary duty to Calcutti, since BDO and Calcutti did not have any contract or professional relationship approaching privity between them, but from accountants' general professional duties to the public. As explained by the Second Circuit in *Cornfeld:* "Accountants do have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying." [4] 619 F.2d at 927 (citing *Fischer v. Kletz,* 266 F.Supp. 180, 188 (S.D.N.Y.1967)). Similarly, in *Hirsch v. Pont,* although the Second Circuit found that defendant accountants had not violated general accounting principles, such principles were assumed to bind the accountants in a claim of aiding and abetting fraud, even as to plaintiffs to whom they owed *no direct fiduciary duty, due to accountants'* general duties to the public. 553 F.2d 750, 761–762 (2d Cir.1977).

The Third Circuit, in *Kline v. First West. Gov't Securities,* 24 F.3d 480, 491 (3d Cir.1994), has stated the duty to the public to disclose incumbent upon professionals more broadly. The *Kline* court held that once a law firm has chosen to speak, it may not omit facts material to its opinions: "[T]his court has adopted a limited duty to investigate and disclose when, by the drafter's omission, a public opinion could mislead third parties." *See also Rose v. Arkansas Valley Envtl. & Util. Auth.,* 562 F.Supp. 1180, 1206–1208 (W.D.Mo.1983) (when a professional "undertakes the affirmative act of communicating or disseminating information" there is "a general obligation or duty to speak truthfully ... an obligation or duty to communicate any additional or qualifying information, then known, the absence of which would render misleading that which was communicated."); *Feldman v. Motorola,* Civ. A. No. 90 C 5887, 1993 WL 497228, at * 12 (N.D.Ill. Oct. 14, 1993) (although facially an allegation could be construed as a failure to disclose, "one can infer that they aided one another in the affirmative action of making statements to analysts and the public.")

■ Similarly, in this case, once BDO was forced to "speak" by being requested to turn over documents to the federal government, it had a duty to do so accurately and completely.[5] Since the IRS made a

---

**4.** Although the general holding in *Cornfeld,* that aider and abettor liability is a valid cause of action under the securities laws, was overruled by the Supreme Court in *Central Bank of Denver, N.A., v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119, and although the case at hand does not concern securities violations in any event, the analysis provided by the Second Circuit in the course of over fifteen years of litigation with regard to aider and abettor liability in the securities context provides useful guidance in determining the scope of aider and abettor liability of accountants, financial service providers and lawyers. While aider and abettor liability does not lie under the securities laws, the same standards and ele-

ments used under New York common law were applied by the Second Circuit, and its analysis of the breadth and requirements for fulfillment of those elements can not be disregarded.

**5.** The Court notes that even if the information allegedly requested by the IRS had been submitted in an accurate and comprehensive manner, it is not clear that such information would have been disseminated or communicated to the "public," as in the other cases cited by the Court. However, the Court finds that the public duty incumbent upon accountants to make accurate and complete statements applies also to submissions made to the IRS.

specific request for information from BDO, if in submitting the information requested, BDO did so in a misleading or less than complete or accurate manner, liability for aiding and abetting may be imposed because of BDO's professional duty to the public not to mislead when making statements or submissions disseminated to, or affecting, the public.

The cases cited by BDO for the proposition that mere inaction can not support aider and abettor liability can be distinguished because they do not concern a defendant's failure to disclose when choosing or being forced to make a public statement, nor an omission in an affirmative action by an accountant; rather, they entail the rule that a lawyer or other professional need not affirmatively reveal fraud by their clients or other associates. *See King*, 650 N.Y.S.2d at 108 (attorney's silence held not to constitute substantial assistance); *DePinto v. Ashley Scott, Inc.*, 222 A.D.2d 288, 635 N.Y.S.2d 215, 217 (1st Dep't 1995) (mere knowledge of fraud and failure to disclose does not amount to substantial assistance).

■ Along with alleging facts that support a duty to disclose, Monaco must also allege that BDO's failure to disclose provided substantial assistance to SBU. In other words, Monaco must allege that BDO's failure to reveal the alleged tax evasion or other illegal conduct by SBU assisted SBU's commission of the tortious conversion alleged by Calcutti against SBU. As alleged in the Third–Party Complaint, had BDO's submission to the IRS been accurate and complete, it would have warned Calcutti of SBU's fraud and thereby could have potentially prevented, at least in part, the injuries suffered by Calcutti. (*See* Third–Party Complaint ¶ 22.) Based on the current record before the Court, even if BDO had made proper submissions to the IRS, the circumstances that could have brought the alleged conversion to Calcutti's attention, or otherwise prevented or impeded SBU's allegedly illegal behavior, are not clearly outlined by Monaco, nor readily inferred. However, the Court finds that it is possible that, after discovery, Monaco will be able to demonstrate facts that could substantiate his allegations. Therefore, because the allegations in the Third–Party Complaint are sufficient to sustain a cause of action for aiding and abetting against BDO for SBU's alleged tortious conversion, the Court will permit further proceedings to allow Monaco an opportunity to provide factual support for those allegations.

Moreover, the nature and extent of the request made by the IRS, the circumstances surrounding that request, as well as what documents or information may have been improperly withheld by BDO, are not set out in the Third–Party Complaint. Only to the extent that, upon further discovery, Monaco is able to solidify and elaborate on the possible duty BDO had to disclose information to the IRS, and BDO's failure to do so, would BDO be properly liable for contribution. But, at this stage of the litigation, the Court can not rule as beyond doubt that Monaco can prove no set of facts that, upon a showing by him that a specific request was made by the IRS and that BDO's response to that request was not accurate or complete, Monaco would not be entitled to contribution if he is found liable to Calcutti. Thus, the Court deems appropriate further inquiry into BDO's possible liability for aiding and abetting the alleged conversion committed by SBU.

## C. *STATUTE OF LIMITATIONS*

■ As an alternate basis for dismissing the Third–Party Complaint, BDO asserts that Monaco's contribution claims are barred by the applicable statute of limitations. Specifically, BDO maintains that

because the statute of limitations has run on any negligence or conspiracy claim that Calcutti could have asserted against BDO, Monaco is also barred from bringing an action for contribution against BDO. In support of this position, BDO argues that "a claim for contribution will only lie where the proposed contributor could be liable to the plaintiff in the case." (Memorandum of Law of BDO in Support of its Motion to Dismiss Third–Party Complaint by Monaco, dated November 26, 2002, at 9 (citing *Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 710 (S.D.N.Y.1984))).

■■■■■ While it is true that under New York law an action for contribution "will not lie unless all the essential elements of a cause of action against the proposed contributor can be made out," *Jordan*, 596 F.Supp. at 710 (citing *Londino v. Health Ins. Plan of Greater New York, Inc.*, 93 Misc.2d 18, 401 N.Y.S.2d 950, 951 (1977)), a contribution action can be brought against a third-party despite the fact that the plaintiff is barred by the applicable statute of limitations from bringing an action against that third-party. *See Cigna Co. v. A.L. Bazzini Co. Inc.*, No. 87 Civ. 6877, 1990 WL 160901, *4 (S.D.N.Y. Oct. 16, 1990) (citing *Scaccia v. Wallin*, 121 A.D.2d 709, 503 N.Y.S.2d 894, 895 (2d Dep't 1986)); *See also* 23 N.Y. Jur.2d *Contribution, Indemnity, and Subrogation* § 64 (2003). Claims for contribution under New York law do not accrue, for statute of limitations purposes, until six years after payment is made on the underlying claim. *See White v. Long*, 229 A.D.2d 178, 182, 655 N.Y.S.2d 176 (3rd Dep't 1997); *Blum v. Good Humor Corp.*, 57 A.D.2d 911, 394 N.Y.S.2d 894, 895 (2d Dep't 1977). Therefore, Monaco's claim for contribution against BDO will not accrue until, and if, a judgment is issued against Monaco. Since Calcutti's case is still pending, the time limitation for Monaco's contribution claim against BDO is in no danger of lapsing.

As a more general policy argument, BDO further asserts that allowing Monaco to bring an action for contribution when Calcutti is barred by the statute of limitations from bringing that same action against BDO would permit circumvention of the public policy behind the statute of limitations. However, the Court is not persuaded by this argument. The propriety of the statute of limitations applicable to actions for contribution, as opposed to a primary action, is well established. In *Cigna*, a court in this district rejected a similar argument, sustaining the availability of a contribution action against a third-party defendant in cases in which the statute of limitations prevented the plaintiff from bringing a claim against the third-party defendant. 1990 WL 160901, at *4. The *Cigna* court explained that "the doctrine of contribution exists to protect one tortfeasor from having to pay for more damages than his or her negligence was responsible for causing. If precluded from seeking contribution [one of the joint tortfeasors] would potentially be liable to [the plaintiff] for the full cost of the damages." *Cigna*, 1990 WL 160901, at *4. Therefore, contribution claims persist beyond the time limitations on the underlying action. Accordingly, in this case, BDO's claim that the statute of limitations prevents Calcutti from being able to sue BDO would not prevent Monaco from seeking contribution from BDO.

### D. *RELEASE AGREEMENT*

■■■■ Finally, for the first time in its Reply Memorandum of Law in Support of its Motion to Dismiss the Third–Party Complaint of Monaco ("BDO Reply Mem."), dated January 8, 2003, BDO argues that Calcutti has released BDO from liability for any wrongdoing stemming from Calcutti's failure to receive settlement payments in exchange for monetary consideration provided to Calcutti by

BDO; and therefore, any claim for contribution against BDO is barred under New York law, which provides that a settling tortfeasor cannot be liable for a contribution claim. (*See* BDO Reply Mem. at 6–7.) In support of this claim, BDO submits an unauthenticated copy of a General Release ("General Release"), dated May 31, 2002, with its Reply Memorandum. (*See* General Release, attached as Exh. A to the Reply Affidavit of Douglas Rappaport, dated November 26, 2002.) Monaco counters that the General Release purportedly executed by BDO violates New York law, and therefore should not bar Monaco's claim for contribution. Moreover, Monaco objects to the submission of the General Release as part of a motion to dismiss on the grounds that it is factual information beyond the scope of the Third–Party Complaint, inappropriate for judicial notice, and because it is unauthenticated.

 On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken, *Brass v. American Film Technologies*, 987 F.2d 142, 150 (2d Cir. 1993); and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991). Materials not falling within any of the categories enumerated above are deemed "matters outside the pleading" for purposes of Fed.R.Civ.P. 12(b). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed.

R.Civ.P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. New York,* 210 F.3d 79, 83 (2d Cir.2000) (internal quotations omitted). This conversion requirement is "strictly enforced" in the Second Circuit. *Id.*

The General Release that BDO urges the Court to consider in the instant motion to dismiss does not fall within any of the four categories of pleading materials properly considered by the Court. The General Release is neither mentioned in, attached to, nor incorporated by reference in the Third–Party Complaint. Nor is the General Release integral to the Third–Party Complaint; in fact, there is no indication that Monaco was aware of, let alone relied upon, the General Release when he drafted the Third–Party Complaint.

Furthermore, it would violate Fed. R.Evid. 201 for the Court to take judicial notice of the contents of the General Release. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991) (holding that in considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) a district court "may also consider matters of which judicial notice may be taken under Fed. R.Evid. 201.") The Federal Rules of Evidence permit a court to take judicial notice of facts "not subject to reasonable dispute." Fed.R.Evid. 201(b). Such facts must either be "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* In this regard, the Second Circuit has stated that "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source." *International Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir.1998); *see*

*also Six West Retail Acquisition, Inc. v. Sony Theatre Mgt. Corp.,* No. 97 Civ. 5499, 2000 WL 264295, at *13 (S.D.N.Y. Mar. 9, 2000) (holding that the court could not take judicial notice of information contained in a stipulation and order from a prior case because doing so would be inconsistent with Fed.R.Evid. 201(b)). Rather, a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (internal quotations omitted); *see also Kramer,* 937 F.2d at 774 (holding that a district court may take judicial notice of the contents of public disclosure documents where the documents are required by law to be filed with the SEC and "are relevant not to prove the truth of their contents but only to determine what the documents stated.")

Here, it is clear that BDO has submitted the General Release in order to demonstrate the truth of the contents therein, namely that, in accepting payment from BDO pursuant to a Pretrial Diversion Agreement, Calcutti has released BDO from any liability in a civil suit. Such a submission to prove the substantive issue before the Court is inappropriate on a motion to dismiss.

Having determined that the General Release is a matter inappropriate for consideration at this stage in the proceedings, the Court can exclude the General Release and decide the Motion to Dismiss on the Third–Party Complaint alone or it can treat the motion as one for summary judgment, and dispose of it as provided in Rule 56. *See* Fed.R.Civ.P. 12(b). In this case, the Court will not convert the motion into one for summary judgment, but will allow the parties to engage in further discovery on the issue of the applicability and legality of the General Release. BDO may seek leave to submit a motion for summary judgment when, and if, following appropriate discovery, it deems such a motion appropriate.

In this regard, the Court notes that although Monaco has had notice of BDO's claim with regard to the General Release, and has in fact submitted an opposition to BDO's argument, which has in turn been replied to in another sur-reply by BDO, there is still insufficient information before the Court to determine whether or not the General Release bars Monaco's submission of the Third–Party Complaint against BDO.[6]

First, while BDO argues in a conclusory manner that Illinois law as opposed to New York law applies to the interpretation of the General Release signed by Calcutti, no evidence, or even statements of fact surrounding the circumstances of the General Release, are submitted by BDO in support of its brief choice of law analysis. On the record before it, and without allowing Monaco an opportunity to investigate and respond to BDO's argument, the Court can not resolve whether New York law or Illinois law should apply to the General Release.

Second, the Court is persuaded that there is a substantial question as to the legality of the General Release under New York law if it is applicable, but again, the Court finds that there is insufficient information and analysis in the current record

---

**6.** The Court notes the following considerations of law and fact to explain why it believes a conversion to summary judgment is not appropriate at this time, and to give the parties guidance as to the Court's concerns with respect to this issue when and if addressed by the parties in later briefing. However, the Court will not, in its instant decision on the motion to dismiss, issue a finding as to whether or not the General Release precludes Moncaco's Third–Party Complaint.

for the Court to make a conclusive determination at this time. The New York case most relevant to Monaco's argument is *People v. Wein*, 294 A.D.2d 78, 743 N.Y.S.2d 439 (1st Dep't 2002), addressed by BDO only in a footnote. (*See* BDO's Response to Sur–Reply, in Further Support of its Motion to Dismiss Third–Party Complaint of Monaco, dated February 19, 2003, at 3 n. 1.) In *Wein*, the New York Appellate Division held that the release of a criminal defendant from civil liability to that defendant's victims was illegal. 743 N.Y.S.2d at 445. The holding in *Wein*, however, was limited to the narrow circumstances of the case, which may, or may not, be distinguishable here. *Id.* at 446. On the current record, the Court has not been apprized of all the circumstances surrounding the General Release, and must rely on mere assertions by BDO, which Monaco has not yet had an opportunity to counter.

Moreover, certain similarities between the General Release in this case and the circumstances in *Wein* are notable and worthy of elaboration. In particular, in *Wein*, in order to receive less than the full restitution made available by the plea agreement, the victim was required to waive his ability to sue the criminal defendant civilly. However, "Penal Law § 60.27(6) secures a victim's independent, parallel right also to pursue a defendant civilly should there be a deficiency in the restitution amount."[7] *Id.* at 446. Therefore, the court in *Wein* refused to abide by the defendant's release from civil liability, holding that this provision of the plea agreement was illegal and unenforceable. *Id.*

The Pretrial Diversion Agreement applicable in this case indicates that: "Any victims who receive money from the government's restitution fund that was directly funded by BDO must sign a release that would prohibit them from filing or pursuing a previously·filed claim against BDO for any of BDO's activities in relation to Gibson or Gibson-related companies." (Pretrial Diversion Agreement, attached as Exhibit B to the Affidavit in Opposition of Ronald Weiner, dated December 10, 2002, at 4.) Apparently, according to the Pretrial Diversion Agreement, a waiver of rights was similarly incumbent upon a victim of BDO's alleged criminal activity who received restitution from BDO, comparable to the waiver determined to be illegal in *Wein*.

Furthermore, as was the case in *Wein*, in this case, a victim's receipt of restitution is premised on a release of civil remedies, but the victim can choose to forego receipt of restitution. However, even "freely" choosing to accept statutorily mandated restitution, in return for a release from civil liability, was held to be coercive and therefore invalid by the *Wein* court. 743 N.Y.S.2d at 443.

Finally, that the remaining cases cited by Monaco stand for the converse proposition—the illegality of a release agreement providing for the government's dismissal of a criminal charge in exchange for a defendant's surrender of his right to sue a municipality—does not make them irrelevant, but rather provides broader support for invalidating criminal plea or diversion provisions requiring the waiver of civil remedies, whether by the defendant, a party obviously privy to the agreement, or by a third-party victim, in exchange for partial restitution. As the *Wein* court declared, given the similarity in coerciveness of the mechanism, "it would [ ] be inconsistent, at best, to enforce this civil waiver

---

**7.** Penal Law § 60.27(6) provides in relevant part: "Any payment made as restitution or reparation pursuant to this section shall not limit, preclude or impair any liability for damages in any civil action or proceeding for an amount in excess of such payment."

exacted from crime victims in order to protect a convicted defendant." 743 N.Y.S.2d at 447. The Court acknowledges that BDO is not a convicted felon, as was the case in *Wein,* but believes it is worthwhile for the parties to submit further argumentation, and relevant facts, with regard to the applicability of the *Wein* holding, before an informed determination can be made on this point.

## III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that third-party defendant BDO Seidman's motion to dismiss the Third-Partly Complaint, defined herein, is denied.

**SO ORDERED.**