In the Matter of the Accounting of W. S. Eaton, as Executor of Charles Whiteman, Deceased, Appellant.

Maude Baird, Claimant, Appellant; Charles F. Whiteman et al., Respondents.

Third Department, December 29, 1944.

*W. S. Eaton,* attorney for executor, appellant.

*J. D. Reed,* attorney for claimant, appellant.

*Charles H. Merriam,* attorney for respondents who may be in the United States Military Service.

BREWSTER, J. Testator's will was executed September 9, 1940. He was then in his eightieth year, a widower, living alone save for his housekeeper, claimant, Maude Baird, who continued in his employ to the time of his death on December 15, 1940, in all, a period of nearly three years, working for wages of two or three dollars a week. The proof is that until his fatal illness of between two and three weeks, testator was " very active." His estate amounted to about $8,500 personalty in addition to his modest home and its furnishings. He had no descendants. By his will he bequeathed his typewriter, sewing machine and a

legacy of $1,000 to the said Maude Baird whom he styled his "nurse and housekeeper", and also devised to her a life use of his house and furnishings. He then gave the residue, in equal shares, to such of his next of kin—thirteen nephews and nieces—as should survive him. All of these so survived. Eleven are nonresidents, none of whom have appeared herein except by an attorney appointed to represent such of them as might have been in military service. That appointment was made because of a deficiency in proofs submitted showing them not to be in such service. This appeal concerns the correctness of the parts of the Surrogate's decree appealed from which (1) sustained the objection to the executor's accounts in paying a claim of Maude Baird, hereinafter referred to, and surcharged him accordingly, and (2) denying the allowance of the claim of W. S. Eaton, an attorney at law, who was also the executor, based upon legal services alleged to have been rendered testator personally. These objections were made by the attorney appointed as aforesaid to represent the eleven nonresident kinsfolk.

The claim of Maude Baird rests upon proofs which are undisputed and they disclose that on October 25, 1940, Mr. Whiteman executed and delivered to Mr. Eaton, his executor, a writing in words and form as follows:

> " Richfield Spa. N. Y.
> Oct. 25, 1940.
>
> Six months after death I empower my executor to pay to Maud Baird, my house-keeper, the sum of One Thousand ($1000.00) dollars, without interest, if she is still in my employ at that time.
>
> CHARLES WHITEMAN."

Claimant continued in testator's employ, rendering him valuable service until his death. The aforesaid writing was not delivered to her until thereafter and no evidence was adduced at the trial showing that prior to testator's death she knew of its existence. The questioned surcharge made in upholding the objection to the executor's payment of the claim is based upon a holding that said writing is unenforcible in that it is testamentary in character and thus void as not having been executed as required by the law of wills. With this I am unable to agree. Although the writing is not a promissory note, because of the expressed condition, still, founded as it was upon an adequate consideration it was sufficient to create an obligation equally imperative. (*Hatch* v. *Gillette*, 8 App. Div. 605.) It empowered the executor to pay subject only to the condition of claimant's

continuance of her service in his employment. As generally construed the word " empower " means a grant of authority rather than a command of its exercise. (30 C. J. S., Empower, p. 236.) This removes the concept of a mere disposition of property to take effect on death. It transcends the reach of a simple testatmentary command, bespeaks the creation of an obligation, and authorizes and directs as to its payment. That it was intended only as a payment for the rendition of service is shown by the paper itself, and its nontestamentary character is further illustrated by the evidence that the testator expressly refused to incorporate its provisions as a codicil to his will, and stated to Mr. Eaton in that connection: " No, I don't want to do it that way; I want it this way. * * * If Miss Baird stays as long as I live, after my death give this paper to her, and six months after my death, or as soon as you can, pay her another thousand dollars, she has earned it."

Had the writing been delivered to her personally or its contents made known to her, then her performance of its stipulated condition would clearly have obligated the estate for its payment. (*Miller* v. *McKenzie et al.*, 95 N. Y. 575, 579–581.) That claimant rendered the services in ignorance of the promised reward does not cause the consideration therefor to fail. " * * * The deceased received and accepted services which were for his benefit, and this created in that respect a sufficient obligation to pay therefor." (*Yarwood* v. *Trusts & Guarantee Co., Ltd.*, 94 App. Div. 47, 52; see, also, *Root* v. *Strang*, 77 Hun 14, 17.) Neither does the mere largess of the reward of payment matter. " The amount was fixed by the maker himself, and he had a right to make his own estimate." (*Velie* v. *Titus*, 60 Hun 405, 406; see, also, *Earl* v. *Peck*, 64 N. Y. 596.) And I think, too, that the testator's delivery thereof to Mr. Eaton was, under the circumstances shown, a good delivery to her, and that his acceptance thereof was a sufficient acceptance by her, if and when, upon the happening of the contingency, she chose to accept its fruits, as she has done, and this, although she was in ignorance of it until the fruits had ripened. (*Worth* v. *Case*, 42 N. Y. 362; *Matter of Simmons*, 48 Misc. 484.) The case of *Worth* v. *Case* (*supra*) involved the validity of a promissory note payable to the maker's sister, on demand, in stated consideration of " services rendered to me." The services were voluntarily rendered by the payee although during their rendition the maker had told her he would pay her well for them. The evidence there showed the rendition of services during a serious illness of the maker, but from which he recovered. The

note was enclosed by the maker in a sealed envelope and delivered to the payee in accordance with an indorsement thereon made and signed by him to the effect that it was not to be unsealed " while I live," and that it was to be " returned to me any time I may wish it." The maker thereafter repossessed and redelivered the envelope while it remained as originally sealed. The payee was not informed nor did she know its contents until she opened it after the maker's death. She, too, had been remembered in the maker's will. The court considered there were but two questions raised, viz., whether the delivery shown was such that if the note was founded upon a sufficient consideration, it would at the maker's death be a valid obligation, and if so, whether such consideration had been shown. The court held affirmatively on both questions, and that the note was valid against the maker's executors. In the reasoning of the court which upheld the delivery there in question and its acceptance by the payee, the court wrote at pages 367–368: " There is no doubt, that a delivery of a deed or note, *or other obligation* [writer's underscoring] to one person in favor of, and for the benefit of another, constitutes a valid and binding delivery as against the party who delivers it, whether the party in whose favor it is delivered is owner of it or not; and for the purpose of protecting his interests, the law holds the party receiving the delivery as his trustee, and makes his acceptance of it the acceptance of the beneficiary. And this, too, whether the person receiving the delivery knows the contents of the instrument or not, and whether he does anything more than merely receive it or not. And yet, where the person in whose favor the instrument is executed will be injured by the acceptance of it, the delivery to such third person does not bind *him*, unless he authorized such acceptance or adopts it by some subsequent act."

The doctrine thus announced does not appear to have been overthrown, and under its sanction, the obligation disclosed by the claim here in question is enforcible.

As to the disallowance of appellant W. S. Eaton's claim for legal services rendered to the testator, there was ample evidence of the performance of legal services and that claimant had not been paid therefor, and we think the evidence was sufficient to show that such services were reasonably worth the sum of three hundred dollars.

The part of the decree appealed from which surcharged the account of the executor with one thousand dollars and interest for having paid the claim of Maude Baird, and directed repay-

ment by her, should be reversed on the facts and on the law, and the account of the executor allowed as respects his payment of said claim; and the part of the decree as to the disallowance of the claim of W. S. Eaton should be reversed on the law and the facts and said claim allowed in the sum of three hundred dollars, and all findings to the contrary made by the court below should be reversed, with costs and disbursements to the executor, payable out of the estate, and said decree in other respects affirmed, without costs.

All concur.

The part of the decree appealed from which surcharged the account of the executor with one thousand dollars and interest for having paid the claim of Maude Baird, and directing repayment by her, reversed on the law and facts, and the account of the executor allowed as respects the payment of said claim; and the part of the decree as to the disallowance of the claim of W. S. Eaton reversed on the law and facts and said claim allowed in the sum of three hundred dollars, and all findings to the contrary made by the court below are reversed, with costs and disbursements to the executor, payable out of the estate, and said decree in all other respects affirmed, without costs.