■ FLEET BANK, Formerly Known as FLEET BANK OF NEW YORK, Appellant, v PINE KNOLL CORPORATION et al., Respondents. [736 NYS2d 737] —Crew III, J.P. Appeal from an order of the Supreme Court (Moynihan, Jr., J.), entered June 28, 2001 in Warren County, which, inter alia, denied plaintiff's motion for summary judgment.

In early 1993 plaintiff, through its representative, Peter Wehnau, contacted defendant Linda C. Edwards, formerly known as Linda C. Usher (hereinafter Edwards), to express an interest in taking over a Small Business Administration (hereinafter SBA) loan that Edwards had obtained through another lender to finance the purchase, renovation and operation of certain resort property located in the Village of Lake George, Warren County. The property in question consisted of three parcels—the first contained 11 resort cottages, the second contained a 12-bedroom Victorian house (hereinafter Pine Knoll House), which Edwards wished to operate as a bed and breakfast, and the third contained a camp. Following her discussion with Wehnau, Edwards authorized the SBA to transfer her loan to plaintiff and provided plaintiff with a business plan, which divided the project into two phases. Phase I, requiring financing in the amount of $180,000, involved purchasing the subject property and renovating the cottages. Phase II consisted of renovating and converting Pine Knoll House into a bed and breakfast and required financing in the amount of $120,000, bringing the total amount of financing needed to $300,000. According to Edwards, both the business plan and her discussions with Wehnau made clear that defendant Pine Knoll Corporation, the entity created by Edwards to operate the underlying business, could become viable and repay any long-term debt incurred only if sufficient financing was provided to renovate both the resort cottages and Pine Knoll House. In other words, it was imperative that plaintiff commit to financing both phases of the project.

According to Edwards, between March 1993 and May 1993, Wehnau repeatedly assured her that plaintiff had approved the entire business plan and that a closing on the loan would occur prior to the start of the summer tourist season at the end

of May 1993. In August 1993, Wehnau allegedly informed Edwards that although the entire loan indeed had been approved, because the SBA loan previously had been issued for a fixed amount ($144,000), the loans would be issued in two closings. The first, which apparently occurred in early September 1993, consisted of the $144,000 SBA loan and two 90-day notes in the amount of $20,000 and $10,000, respectively. All three loans were secured by mortgages and, according to Edwards, Wehnau represented that the second closing would occur "within two weeks."

The second closing did not take place as planned but, according to Edwards, Wehnau continued to assure her that the additional financing would be forthcoming. In December 1993, when the original short-term notes became due, Edwards, on behalf of the corporation, executed a new 90-day note and used the proceeds to pay off the previous indebtedness. According to Edwards, Wehnau now advised her that the second closing would occur in January 1994 and, in the interim, she should use her credit cards and whatever personal assets she had available to begin renovations. Again, no closing took place and, in March 1994, Edwards submitted a revised business plan and executed another 90-day note to replace and pay off the previous short-term note that had become due.

Further delays ensued and, in or about April 1994, Wehnau left plaintiff's employ as a result of corporate reorganization and Douglass Ball became the relationship manager for defendants' loan. Although Ball did not possess lending authority, he purportedly advised Edwards that the second loan had been approved and that she should continue to utilize her personal assets to fund the project until the closing occurred.[1] Edwards executed two additional short-term notes in May 1994 to pay off the previous short-term note and certain contractors who had performed work on the project. Again, according to Edwards, she was assured that the balance of the financing would be provided by plaintiff at a closing to occur in June 1994, provided plaintiff receive an updated appraisal and balance sheet from defendants. Ball allegedly did not attend the scheduled closing and, when finally located by Edwards, advised her that the loan had in fact been declined. Plaintiff terminated Ball's employment in December 1994 based upon his violation of plaintiff's lending policies—namely, funding and/or guaranteeing loans when he had no authority to do so—and his history of being untruthful with customers.

---

1. According to Edwards, Ball further advised her that the loan process could be expedited if she would agree to date him.

Edwards thereafter stopped making payments on the outstanding loans and, in August 1995, plaintiff commenced this foreclosure action. Defendants answered and counter-claimed for breach of contract and negligent misrepresentation. Plaintiff thereafter moved for, inter alia, leave to file an amended reply asserting the statute of frauds as a defense and summary judgment granting foreclosure and dismissing defendants' counterclaims, and defendants cross-moved for leave to file an amended answer asserting promissory estoppel as an additional counterclaim. Supreme Court granted the parties leave to submit amended pleadings and, ultimately, denied plaintiff's motion for summary judgment. This appeal by plaintiff ensued.

Initially, we agree with plaintiff that Supreme Court erred in denying its motion for summary judgment with respect to its foreclosure claim. "The case law makes clear that where a mortgagee produces the mortgage and unpaid note, together with evidence of the mortgagor's default, the mortgagee demonstrates its entitlement to a judgment of foreclosure as a matter of law, thereby shifting the burden to the mortgagor to assert and demonstrate, by competent and admissible evidence, any defense that could properly raise a question of fact as to his or her default * * *" (*United Cos. Lending Corp. v Hingos*, 283 AD2d 764, 765 [citations omitted]; *see, Trustco Bank, Natl. Assn. v Labriola*, 246 AD2d 735). Here, plaintiff produced the subject notes and mortgages, together with an affidavit from one of its vice-presidents attesting to defendants' default. In opposition, Edwards does not dispute the underlying default but, rather, contends that plaintiff's foreclosure claim and defendants' counterclaims are so "inextricably interwoven" so as to preclude plaintiff's entitlement to summary judgment on this point. We cannot agree. Admittedly, defendants' counter-claims, all of which are addressed to plaintiff's failure to provide the additional financing allegedly promised by Wehnau and Ball, are related to plaintiff's foreclosure claim. In our view, however, such counterclaims are not so intertwined with plaintiff's foreclosure claim as to render granting plaintiff's motion for summary judgment on the foreclosure claim and sever-ing the counterclaims inappropriate (*see, Jovee Contr. Corp. v AIA Envtl. Corp.*, 283 AD2d 398, 400; *compare, Matter of Mono-tube Pile Corp. v Pile Found. Constr. Corp.*, 269 AD2d 531).

We also find merit to plaintiff's contention that Supreme Court erred in failing to dismiss defendants' counterclaim for breach of contract. The statute of frauds requires that every agreement that, by its own terms, cannot be performed within

one year, or that creates an interest in real property, is void and unenforceable unless such agreement is made in writing and subscribed by the party to be charged (*see,* General Obligations Law § 5-701 [a] [1]; § 5-703 [1]). The statute of frauds further provides that any agreement containing a provision prohibiting the oral modification thereof cannot be changed by an executory agreement unless such agreement is reduced to writing (*see,* General Obligations Law § 15-301 [1]). A party seeking to avoid application of the statute of frauds must demonstrate some exception thereto, such as an admission by the other party to the essential terms and actual existence of the oral contract (*see, Dzek v Desco Vitroglaze of Schenectady,* 285 AD2d 926, 927) or waiver or estoppel (*see, 310 S. Broadway Corp. v Barrier Gas Serv.,* 224 AD2d 409, 410).

Here, the oral agreement sought to be enforced pertained to a 30-year renovation loan, which falls squarely within the purview of General Obligations Law § 5-701 (a) (1). Additionally, defendants do not appear to dispute that the underlying loan documents contain "no oral modification" provisions. Finally, defendants failed to invoke and/or demonstrate an exception to the statute of frauds.[2] Accordingly, defendants' counterclaim for breach of contract is dismissed.

We now turn to defendants' counterclaim for negligent misrepresentation. In order to prevail on this point, defendants need to establish that plaintiff had a duty to use reasonable care to impart correct information due to a special relationship existing between the parties, that the information provided by plaintiff was incorrect or false, and that defendants reasonably relied upon the information provided (*see, Grammar v Turits,* 271 AD2d 644, 645; *Solondz v Barash,* 225 AD2d 996, 998). As a general rule, a claim for negligent misrepresentation is precluded in a breach of contract action absent a violation of a legal duty "independent of that created by the contract" (*Scott v KeyCorp,* 247 AD2d 722, 725). To that end, a special relationship "requires a closer degree of trust than an ordinary business relationship" (*Busino v Meachem,* 270 AD2d 606, 608); for that reason, there typically is no fiduciary relationship between a borrower and a bank (*see, Trustco Bank, Natl. Assn. v Cannon Bldg. of Troy Assoc.,* 246 AD2d 797, 799; *see also, FAB Indus. v BNY Fin. Corp.,* 252 AD2d 367; *Banque Nationale de Paris v 1567 Broadway Ownership Assoc.,* 214 AD2d 359, 360).

---

**2.** Although defendants have asserted a counterclaim for promissory estoppel (*see, infra*), they do not appear to contend that plaintiff should be estopped from invoking the statute of frauds as a defense to the counterclaim for breach of contract.

In determining whether a special relationship exists in a commercial context, the Court of Appeals has instructed that "a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose" (*Kimmell v Schaefer*, 89 NY2d 257, 264).

Applying these principles to the matter before us, we are persuaded that defendants have tendered sufficient admissible proof to raise a question of fact as to the existence of a special relationship with plaintiff. Edwards has averred, in sum and substance, that the various financial transactions undertaken by her on behalf of the corporation following the September 1993 closing, i.e., the execution of the series of short-term notes and the management and alleged depletion of her personal assets, were done in response to information and/or advice that she received from Wehnau and Ball, who acted as the relationship managers for the underlying loan. In this regard, one of plaintiff's senior vice-presidents candidly acknowledged at his examination before trial that "a lot of small business customers are not financiers. They are good at whatever they happen to do, but they don't know finance. They rely heavily upon their relationship managers to provide them with * * * financial solutions. * * * By providing a customer with inaccurate information, * * * you could put them in a very bad position. * * * We need to be very careful in how we advise these people." Such testimony, coupled with the other proof contained in the record, including Edward's averments that she repeatedly was assured that the phase II financing, without which the entire project could not succeed, would be forthcoming, persuades us that defendants have raised a question of fact as to whether, under the particular circumstances presented here, a special relationship existed between plaintiff and defendants and, if so, whether defendants' reliance upon the information conveyed was reasonable. Accordingly, Supreme Court properly declined to dismiss defendants' counterclaim for negligent misrepresentation.

As a final matter plaintiff, again relying upon the statute of frauds, contends that Supreme Court erred in failing to dismiss defendants' counterclaim for promissory estoppel. Defendants, asserting that they have sustained an "unconscionable injury," argue that the statute of frauds does not bar such a claim and, on the merits, the record as a whole raises a question of fact as

to whether, inter alia, defendants justifiably relied upon the information conveyed and/or advice imparted by plaintiff's representatives. "To establish a viable cause of action sounding in promissory estoppel, [the aggrieved party] must allege (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise * * *" (*Rogers v Town of Islip*, 230 AD2d 727, 727 [citation omitted]; *see, Freedman & Son v A.I. Credit Corp.*, 226 AD2d 1002, 1003). Additionally, the injured party must demonstrate that it would be unconscionable to invoke the statute of frauds to bar such a claim (*see, Melwani v Jain*, 281 AD2d 276, 277; *Steele v Delverde S.R.L.*, 242 AD2d 414, 415; *Yedvarb v Yedvarb*, 237 AD2d 433, 434, *lv denied* 90 NY2d 804; *Ginsberg v Fairfield-Noble Corp.*, 81 AD2d 318, 320-321).

Here, Edwards has averred that, as a result of plaintiff's failure to fulfill its alleged oral agreement to finance phase II of the project, she incurred debt in excess of $100,000, depleted her son's college savings account, lost her residence in the Town of Queensbury, Warren County, to foreclosure, was required to sell her car to support the debt incurred and, in the end, was left with only a portion of her original business venture, i.e., the rental of the resort cottages. In our view, such averments are sufficient to raise a question of fact as to whether defendants have sustained an unconscionable injury (*see, Shapiro v Shorenstein*, 157 AD2d 833, 835; *see also, Lowinger v Lowinger*, 233 AD2d 236). Accordingly, we cannot say, at this juncture, that defendants' counterclaim for promissory estoppel is barred by the statute of frauds. We also are of the view, should the merits of this claim ultimately be examined, that there is a question of fact as to whether defendants' justifiably relied upon the promise allegedly made. The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, Spain, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for summary judgment on its foreclosure claim and dismissal of defendants' counterclaim for breach of contract; motion for summary judgment on the foreclosure claim granted and counterclaim for breach of contract dismissed; and, as so modified, affirmed.