In the Matter of the Estate of EDMUND FELIX HENNEL, Also Known as EDMUND HENNEL, Deceased. GREGORY HENNEL et al., Respondents; HAZEL HENNEL, as Executor of EDMUND FELIX HENNEL, Deceased, Appellant. [20 NYS3d 460]—

Devine, J. Appeal from an order of the Surrogate's Court of Schenectady County (Versaci, S.), entered June 5, 2013, which, in a proceeding pursuant to SCPA 1809, among other things, partially granted petitioners' motion for summary judgment determining the validity of their claim against decedent's estate.

Edmund Felix Hennel (hereinafter decedent) owned rental property in the City of Schenectady, Schenectady County and, in 2001, he took out a loan for gifting purposes secured by a mortgage on the property. The 2001 mortgage was satisfied as part of a 2003 refinancing transaction that, in turn, left a new mortgage on the property. In 2006, after decedent tired of maintaining the property and dealing with tenants, petitioners, his grandsons, agreed to assume those responsibilities. Decedent, as a result, executed a deed that reserved to him a life estate and granted the remainder interest to petitioners. Petitioners were assured by decedent that they would not be burdened by the mortgage when they entered into possession of the property, and decedent contemporaneously executed a will directing "that the mortgage . . . if any, in existence at the time of [his] death, . . . be paid from the assets of [his] estate."

Decedent executed a will in 2008 that revoked the prior will and made no provision for discharging the mortgage. Decedent passed away on December 1, 2010 and, after the 2008 will was admitted to probate, petitioners filed a notice of claim asserting that the estate was obliged to satisfy the mortgage. Respondent, decedent's widow and the executor of his estate, rejected the claim. Petitioners responded by commencing this SCPA 1809 proceeding, asserting that the claim should be allowed.

Petitioners subsequently moved, and respondent cross-moved, for summary judgment. Surrogate's Court granted petitioners' motion in part and held, among other things, that decedent had agreed to satisfy the mortgage out of estate assets and that his estate was obliged to honor that agreement. Respondent now appeals.

We affirm. A will is ambulatory in nature, and the testator is generally free to alter or revoke its provisions prior to his or her death (*see Matter of American Comm. for Weizmann Inst. of Science v Dunn*, 10 NY3d 82, 92 [2008]; *Blackmon v Estate of Battcock*, 78 NY2d 735, 739 [1991]). A testator may validly surrender that right, but "the law requires, as a threshold, a showing of clear and unambiguous evidence of the intent to" do so (*Matter of Murray*, 84 AD3d 106, 116 [2011], *lv dismissed and denied* 18 NY3d 874 [2012]; *see Matter of American Comm. for Weizmann Inst. of Science v Dunn*, 10 NY3d at 91). Petitioners were accordingly obliged to demonstrate that "decedent's alleged promise was made and understood, not as a mere expression of intention, but as the assumption of a binding obligation in consideration of a promise given by [petitioners] in return, or of performance by [petitioners] of a stipulated act" (*Frankenberger v Schneller*, 258 NY 270, 273 [1932]; *accord Matter of Versailles Found. [Bank of N.Y.]*, 202 AD2d 334, 334 [1994]).

Here, Frank Parisi was the attorney who represented decedent and petitioners in their 2006 dealings, and respondent acknowledged the accuracy of his deposition testimony. Parisi testified that the 2006 will resulted from decedent committing, in return for petitioners taking over management of the property, to convey title of the property to them and to ensure that his estate would satisfy the mortgage burdening it. Decedent gave petitioners money to cover a mortgage payment due after the transfer of title. Petitioners thereafter paid the mortgage out of the rent they collected—rent that belonged to decedent as life tenant—rather than from their own assets.

Numerous documents were also created to effectuate the agreement, and instruments "executed at substantially the same time, [and] related to the same subject-matter, . . . must be read together as one" (*Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197 [1941]; *see Patton v Ferrara*, 46 AD3d 1203, 1204 [2007]). The 2006 will directs that the mortgage be satisfied out of the assets of decedent's estate, while the deed grants a remainder interest to petitioners without any mention of the

mortgage.* The parties further executed a real property transfer report that listed the full sale price for the transaction as "N/A," notwithstanding that the form defines full sale price as "the total amount paid for the property including . . . the assumption of mortgages or other obligations." The foregoing proof, in short, demonstrates that decedent acknowledged a legal obligation to satisfy the mortgage out of estate assets in return for the management services performed by petitioners during his lifetime (*see e.g. Matter of Whiteman*, 268 App Div 591, 593-595 [1944]; *Matter of Bradbury*, 105 App Div 250, 255-256 [1905]; *compare Pershall v Elliott*, 249 NY 183, 185-187 [1928]).

Respondent points out that "a contract to make a testamentary provision . . . must be in writing and subscribed by the party to be charged with its performance" (*Aaron v Aaron*, 64 AD3d 1103, 1104 [2009], *lv denied* 13 NY3d 714 [2010]; *see* EPTL 13-2.1 [a] [2]; General Obligations Law § 5-701 [a] [1]; *Brown v Brown*, 12 AD3d 176, 176 [2004]). She argues that decedent never gave up his right to revoke the provision of the 2006 will regarding the satisfaction of the mortgage in writing, and that his oral commitment to do so runs afoul of the statute of frauds. Inasmuch as neither the 2006 will nor any other written document makes that promise explicit, we agree (*see Matter of Thoens*, 88 Misc 2d 1006, 1008-1009 [1975], *affd* 51 AD2d 691 [1976], *affd* 41 NY2d 823 [1977]). Therefore, petitioners were obliged to bring this case within an exception to the statute of frauds, "such as an admission by the other party to the essential terms and actual existence of the oral contract or waiver or estoppel" (*Fleet Bank v Pine Knoll Corp.*, 290 AD2d 792, 795 [2002] [citation omitted]).

Petitioners invoked the doctrine of promissory estoppel in order to do so, which requires "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise" (*Rogers v Town of Islip*, 230 AD2d 727, 727 [1996]; *see Clifford R. Gray, Inc. v LeChase Constr. Servs., LLC*, 31 AD3d 983, 986 [2006]). It suffices to say that, given the undisputed facts regarding the arrangement between petitioners and decedent, those elements were established.

---

* Although petitioners were deeded the remainder interest, decedent retained a limited power to appoint "any one or more of [his] issue" to receive the remainder interest instead (*see* EPTL 10-4.1). The fact that he did not do so, and allowed petitioners to continue performing maintenance duties on the property, is certainly suggestive of his belief that petitioners were living up to their end of the arrangement.

A more troubling issue arises because promissory estoppel is generally unavailable to bar a statute of frauds defense (*see Cohen v Brown, Harris, Stevens*, 64 NY2d 728, 730 [1984]). As such, petitioners were further obliged to show that this case fell within the limited set of circumstances that would permit the doctrine to be applied (*see Tribune Print. Co. v 263 Ninth Ave. Realty*, 88 AD2d 877, 879 [1982], *affd* 57 NY2d 1038 [1982]). Petitioners endeavor to do so by arguing that "it would be unconscionable to invoke the statute of frauds to bar [their] claim" (*Fleet Bank v Pine Knoll Corp.*, 290 AD2d at 797; *see Bernard v Langan Porsche Audi*, 143 AD2d 495, 496 [1988]; *Buddman Distribs. v Labatt Importers*, 91 AD2d 838, 839 [1982]).

Petitioners have profited to some degree from their dealings with decedent, as they now own encumbered property valued at $235,000. That being said, decedent sought to become a life tenant on the property, which allowed him to "enjoy[ ] the rents and profits of the land, [but also obliged him to] pay the taxes and make all ordinary, reasonable and necessary repairs required to preserve the property and prevent its going to decay or waste" (*Matter of Gaffers*, 254 App Div 448, 451 [1938]). Decedent desired to retain the financial advantages of life tenancy while avoiding many of the obligations, and petitioners enabled that desire by agreeing to manage and maintain the property during his lifetime. Petitioners performed that work upon the understanding that the mortgage would be satisfied by decedent's estate and, despite having performed their duties in full, respondent now takes the position that they are not entitled to the very consideration they bargained for in return. This, plainly, is "so strong and manifest [an inequality] as to shock the conscience and confound the judgment of any [person] of common sense" (*Mandel v Liebman*, 303 NY 88, 94 [1951] [internal quotation marks and citation omitted]). Thus, an application of the statute of frauds would wreak an unconscionable result in this case, and Surrogate's Court properly estopped respondent from invoking the defense.

As a final matter, respondent asserts that the provision of the 2008 will directing payment of all "just debts" owed by decedent's estate was inapplicable to petitioners' claim. Even assuming that she is correct, Surrogate's Court remained well within its right "to determine all matters both legal and equitable necessary to the settlement of a decedent's estate" by directing respondent to satisfy a valid claim against the estate (*Matter of Garofalo*, 141 AD2d 899, 901 [1988]; *see* SCPA 201 [2]; *Matter of Raymond v Davis*, 248 NY 67, 71-72 [1928]; *Matter of Maijgren*, 193 Misc 814, 821 [1948]).

Respondent's remaining contentions have been examined and found to be lacking in merit.

Rose and Clark, JJ., concur.

Garry, J.P. (dissenting). We respectfully dissent. Although we agree with the majority in large part, we disagree with the final and critical step in the analysis. We agree that the 2006 transaction in which Edmund Felix Hennel (hereinafter decedent) signed the deed and executed the will constituted his acknowledgment of an agreement that the mortgage would be satisfied from estate assets in exchange for petitioners' services in managing the property during his lifetime. We further agree that the statute of frauds applies here, as there was no written promise that decedent would not revoke the 2006 will or would include a direction to satisfy the mortgage in any future will (*see* EPTL 13-2.1 [a] [2]; General Obligations Law § 5-701 [a] [1]). It bears specifically noting that there was no evidence that decedent expressed any such promise in any form. On the contrary, the entire transaction was structured to be revocable; in addition to the ambulatory nature of decedent's 2006 will, the deed conveying the remainder interest in the premises to petitioners specifically reserved a power of appointment and, thus, decedent remained entirely free to transfer that interest to someone else at any time before he died (*see* EPTL 10-4.1). For these reasons, we wholly agree with the majority that petitioners cannot enforce decedent's promise to satisfy the mortgage with estate assets unless they prove that promissory estoppel was properly applied for this purpose. We depart from the majority as we find that this heavy burden was not satisfied.

The doctrine of promissory estoppel is applied to enforce an oral agreement only upon proof "that it would be *unconscionable* to invoke the statute of frauds to bar such a claim" (*Fleet Bank v Pine Knoll Corp.*, 290 AD2d 792, 797 [2002] [emphasis added]). In the larger context of contract law, an unconscionable agreement is one deemed to be "grossly unreasonable," where there is "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" (*Warren Elec. Supply v Davidson*, 284 AD2d 869, 870 [2001] [internal quotation marks and citations omitted]). It is a contract that "no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense" (*Lounsbury v*

*Lounsbury*, 300 AD2d 812, 814 [2002] [internal quotation marks, brackets and citations omitted]; *see LaSalle Bank N.A. v Kosarovich*, 31 AD3d 904, 906 [2006]). A similarly demanding standard applies in the context of promissory estoppel.

"The strongly held public policy reflected in New York's [s]tatute of [f]rauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result" (*Philo Smith & Co., Inc. v USLIFE Corp.*, 554 F2d 34, 36 [2d Cir 1977]). Thus, to warrant the application of promissory estoppel as a bar to the statute of frauds, a party must demonstrate egregious harm beyond the ordinary financial losses that would result from a breached agreement (*see e.g. Carvel Corp. v Nicolini*, 144 AD2d 611, 612-613 [1988] [loss was not unconscionable when licensee relinquished another business, incurred various expenses and worked to develop business goodwill in reliance on an oral promise to renew a licensing agreement]; *American Bartenders School v 105 Madison Co.*, 91 AD2d 901, 902 [1983], *affd* 59 NY2d 716 [1983] [loss was not unconscionable when school reduced its staff, student body and general operation in reliance on landlord's oral promise to reduce its rent]; *Ginsberg v Fairfield-Noble Corp.*, 81 AD2d 318, 320-321 [1981] [employee did not sustain unconscionable injury by giving up a good position in reliance on the promise of a better job]).

This Court previously found issues of fact as to whether a debtor incurred unconscionable injury when, relying upon a lender's broken promise to provide business financing, the debtor not only lost part of her business, but also incurred more than $100,000 in debt, exhausted her personal resources, depleted her child's college savings account, lost her home to foreclosure and had to sell her car (*Fleet Bank v Pine Knoll Corp.*, 290 AD2d at 797; *see also Buddman Distribs. v Labatt Importers*, 91 AD2d 838, 838-839 [1982]). This record reflects no such severe and "irremediable change in position" (*Philo Smith & Co., Inc. v USLIFE Corp.*, 554 F2d at 36). Petitioners sustained a loss, in that the building that they now own is worth less than they thought it would be when they agreed to repair, maintain and manage it during decedent's lifetime. Nevertheless, they realized a significant benefit in exchange for their services. Despite the mortgage, the building retains substantial value; its appraised value is $235,000, the mortgage balance was about $92,000 at the time of the 2006 transfer and timely mortgage payments were made thereafter, leaving equity of about $150,000 when decedent died.

Moreover, petitioners did not personally absorb all of the

building's expenses. As the life tenant, decedent was entitled to collect and keep the rental income, but did not do so; instead, petitioners used the rental payments to pay the mortgage and cover other expenses, and decedent took tax deductions for these sums. Petitioners did not specify how much time they invested in maintaining the premises during the four years that elapsed between the agreement and decedent's death and, significantly, there was no claim that petitioners' management responsibilities were so overwhelming that they were forced to neglect other business responsibilities or sacrifice other opportunities. Further, they do not claim that the continuation of the mortgage encumbrance after decedent's death transformed the building into a losing business proposition, or that they are now suffering any hardships resulting from the mortgage debt, such as difficulty in obtaining other business financing. Petitioners' work undoubtedly benefitted decedent by relieving him of the responsibility of keeping up the property, but it likewise benefitted petitioners by protecting and enhancing the value of the building that they now own. They could sell the building, pay off the mortgage, escape the responsibilities of its management and realize the benefit of the equity at any time they choose.

If the mere fact that a promisee sustained a loss of any degree is found sufficient, without more, to invoke the doctrine of promissory estoppel, the requirement of unconscionability will have no meaning, and the policy objectives served by the statute of frauds will then be "severely undermined" (*Philo Smith & Co., Inc. v USLIFE Corp.*, 554 F2d at 36). Petitioners were substantially compensated for their services. Their losses "represent[ed] nothing more than that which flowed naturally from the nonperformance of the remaining term[s] of the unenforceable agreement," and the fact that they did not receive the full benefit that they expected to derive from the bargain is simply not so egregious or unjust as to reach the level of unconscionability (*Stainless Broadcasting Co. v Clear Channel Broadcasting Licenses, L.P.*, 58 AD3d 1010, 1013 [2009]; *see Coleman v CMI Transp.*, 222 AD2d 285, 285 [1995]; *Swerdloff v Mobil Oil Corp.*, 74 AD2d 258, 263-264 [1980], *lvs denied* 50 NY2d 803, 913 [1980]). Accordingly, we would reverse.

Lynch, J., concurs. Ordered that the order is affirmed, with costs.