[27 NYS3d 507]

PETER CASTELLOTTI, Appellant, v LISA FREE, Respondent.

First Department, March 8, 2016

### APPEARANCES OF COUNSEL

*Schwartz, Levine & Kaplan, PLLC*, New York City (*Chad T. Harlan* and *Jeffrey A. Kaplan* of counsel), for appellant.

*Fox Rothschild LLP*, New York City (*James M. Lemonedes* and *Zev Singer* of counsel), for respondent.

### OPINION OF THE COURT

RICHTER, J.

This action involves a family dispute between plaintiff Peter Castellotti and his sister, defendant Lisa Free.[1] Before her death, the parties' late mother, Madeline Castellotti, removed Peter from her will, leaving Lisa as sole beneficiary. Madeline made this change because Peter was going through a divorce, and Madeline wanted to prevent Peter's then-wife from benefiting from any of Madeline's assets. At about the same time, Peter and Lisa allegedly entered into an oral agreement whereby Lisa agreed, inter alia, to give Peter half of the inheritance when his divorce became final, in return for Peter's paying Madeline's estate taxes. After Peter paid the taxes, Lisa allegedly reneged on the deal, and this action ensued. We conclude that the complaint states viable claims for both promissory estoppel and unjust enrichment, even though the parties' oral agreement is barred by the statute of frauds. Further, under the circumstances presented here, Peter's claims need not be dismissed on public policy grounds merely because he entered into the alleged oral agreement for the purpose of delaying the receipt of assets that he never owned in the first place.

Madeline was the sole shareholder of Whole Pies, Inc., a business that owns John's Pizzeria in midtown Manhattan. In February 2003, prior to Madeline's death, Peter brought a divorce action against his then-wife, Rea Castellotti. After the divorce action was commenced, Madeline, who was seriously ill, decided to change her will to remove Peter as 50% benefi-

---

1. The facts set forth are taken from the complaint and are accepted as true for purposes of this appeal.

ciary and instead make his sister Lisa the sole beneficiary. Madeline made the change because she disliked Rea, and wanted to ensure that Rea would not benefit in the divorce action from any of Madeline's assets.

In June 2004, Madeline passed away and, pursuant to her will, Lisa received all of Madeline's assets, including 100% of Whole Pies, 51% of PMPL, LTD (the general partner of a real estate partnership), Madeline's residence on Staten Island, and funds contained in various bank accounts (collectively the assets). In 2004, both before and again after Madeline's death, Peter and Lisa allegedly entered into an oral agreement whereby Peter agreed to pay Madeline's estate taxes with his share of Madeline's life insurance proceeds. In return, Lisa agreed to give Peter 50% of the assets upon the finality of his divorce, and 50% of the income and proceeds generated from the assets before the divorce was final. Lisa also agreed to name Peter as sole beneficiary of a life insurance policy valued at no less than $5 million, and to maintain that policy until the assets were physically transferred to Peter.

In February 2005, pursuant to the oral agreement, Peter allegedly paid Madeline's estate taxes with his share of the life insurance proceeds. After Peter's divorce became final in November 2008, Lisa failed to transfer 50% of the assets to Peter. Lisa did maintain an account in her name at Wachovia Bank, to which Peter was given access, and told Peter that she was depositing his 50% of the net proceeds from Whole Pies into the account. Lisa, however, did not deposit the agreed-upon 50%, but only made sporadic deposits; in May 2011, Lisa denied Peter access to the account. Lisa also procured, at Peter's expense, a $5 million insurance policy naming Peter as sole beneficiary. Lisa maintained this policy from February 2005 until May 2012, when she refused to sign the renewal documents and let the policy lapse.

Peter commenced this action, asserting claims against Lisa for breach of contract, unjust enrichment, breach of fiduciary duty, an accounting, fraud, breach of the covenant of good faith and fair dealing, and conversion.[2] Lisa answered, and asserted affirmative defenses, including that Peter's claims were barred

2. In June 2013, Peter's ex-wife Rea moved to intervene in this action to bring claims against Peter and Lisa for falsely representing during the divorce action that Peter had no ownership interest in Whole Pies. The lower court granted Rea's motion, but that order was reversed on appeal (118 AD3d 631 [1st Dept 2014]). This Court concluded that the proper remedy for any

by the statute of frauds. Lisa thereafter moved, pursuant to CPLR 3211, to dismiss the complaint. In a decision entered July 11, 2014, the motion court granted Lisa's motion and dismissed the complaint in its entirety (2014 NY Slip Op 31798[U] [2014]).[3] This appeal ensued.

■ The complaint contains two causes of action for breach of contract. In the first, Peter alleges that although he fully complied with the oral agreement by paying Madeline's estate taxes, Lisa breached the contract by failing to transfer any of the assets to Peter or provide him with 50% of the income and proceeds generated from the assets. The second cause of action alleges that Lisa breached the agreement by failing to renew the $5 million life insurance policy. The motion court properly dismissed these claims as barred by the statute of frauds. General Obligations Law § 5-701 (a) (9) provides that an agreement must be in writing if it is "a promise . . . to name a beneficiary of [a life insurance] policy." As alleged in the complaint, the oral agreement here included a promise by Lisa to name Peter as sole beneficiary of a life insurance policy. Thus, that provision falls squarely within the statute of frauds, rendering the entire agreement void (*see Apostolos v R.D.T. Brokerage Corp.*, 159 AD2d 62, 65 [1st Dept 1990] ["As a general rule, if part of an entire contract is void under the Statute of Frauds, the whole contract is void"]).[4]

Peter argues that even if the life insurance provision falls within the statute of frauds, that provision is severable and does not void the remainder of the agreement.

> "[W]here an oral agreement is a severable one, i.e., susceptible of division and apportionment, having two or more parts not necessarily dependent upon each other, that part which, if standing alone, is not required to be in writing, may be enforced, provided such apportionment of the agreement may be accomplished without doing violence to its terms or making a new contract for the parties" (*id.*).

possible fraud committed during the divorce action was to move to vacate the divorce judgment, and not to collaterally attack that judgment in this action (118 AD3d at 631-632).

3. On August 5, 2014, an amended order was entered correcting the original order by adding decretal language.

4. There is no merit to Peter's claim that Lisa failed to meet her burden to affirmatively disprove the existence of a written contract. Because the complaint explicitly states that the parties entered into an oral agreement, there was no need for Lisa to show that no writing existed.

Under the oral agreement alleged here, Peter promised to pay Madeline's estate taxes and, in exchange, Lisa agreed to give Peter 50% of the assets upon his divorce being final, and 50% of the income and proceeds generated by the assets prior to the finality of the divorce. Lisa also promised to name Peter as the sole beneficiary on a life insurance policy that would be in existence up until the date of the physical transfer of the assets. Thus, the life insurance provision is intertwined with and dependent on the provision involving transfer of the assets, and cannot be apportioned without doing violence to the terms of the agreement (*see e.g. Jordache Ltd. v Oved*, 40 AD3d 400, 400 [1st Dept 2007]; *Whitman Heffernan Rhein & Co. v Griffin Co.*, 163 AD2d 86, 87 [1st Dept 1990], *lv denied* 76 NY2d 715 [1990]). Indeed, in his appellate brief, Peter concedes that the life insurance provision serves as "collateral" to ensure satisfaction of the other provisions. Further, the life insurance provision and the remaining provisions of the agreement are both supported by the same consideration, namely, Peter's payment of Madeline's estate taxes (*see Sheresky v Sheresky Aronson Mayefsky & Sloan, LLP*, 35 Misc 3d 1201[A], 2011 NY Slip Op 52504[U], *11 [Sup Ct, NY County 2011] [portions of oral agreement not severable where the plaintiff alleged the same consideration for both promises]).

The motion court properly rejected Peter's claim that the alleged partial performance of the agreement removes it from the statute of frauds. Although General Obligations Law § 5-703 requires certain contracts concerning real property to be in writing, section 5-703 (4) permits a court, acting in equity, to compel the specific performance of agreements that have been partially performed. This Court has held, however, that the partial performance exception applies only to the statute of frauds provision in section 5-703, and has not been extended to section 5-701 (*Gural v Drasner*, 114 AD3d 25, 32 [1st Dept 2013] ["the law simply does not provide for or permit a part performance exception for oral contracts other than those to which General Obligations Law § 5-703 applies"], *lv dismissed* 24 NY3d 935 [2014]). Here, Lisa asserted a statute of frauds defense under General Obligations Law § 5-701, not section 5-703. Thus, the partial performance doctrine is inapplicable (*see Rose v Spa Realty Assoc.*, 42 NY2d 338, 343 [1977] ["Although the General Obligations Law (§ 5-703, subd 2) subjects the sale of real property to the Statute of Frauds, it was not pleaded by defendants and is therefore not involved in this case"]).

Peter argues that the partial performance doctrine is properly invoked here because the oral agreement involves conveyances of real property. Specifically, Peter points to Lisa's promise to transfer 50% of PMPL, and 50% of Madeline's Staten Island residence. First, PMPL is not real property, but rather, only an entity that is a general partner in another entity that owns real property. Second, even if the promised conveyance of PMPL and the Staten Island home could be saved by the partial performance doctrine contained in General Obligations Law § 5-703, those provisions of the contract are not severable from the larger agreement, the whole of which is barred by General Obligations Law § 5-701.

Although the breach of contract causes of action cannot stand, the complaint sufficiently states a claim under the doctrine of promissory estoppel.[5] The elements of a promissory estoppel claim are: (i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance (*see MatlinPatterson ATA Holdings LLC v Federal Express Corp.*, 87 AD3d 836, 841-842 [1st Dept 2011], *lv denied* 21 NY3d 853 [2013]; *Agress v Clarkstown Cent. School Dist.*, 69 AD3d 769, 771 [2d Dept 2010]; *Fleet Bank v Pine Knoll Corp.*, 290 AD2d 792, 797 [3d Dept 2002]; *Chemical Bank v City of Jamestown*, 122 AD2d 530, 531 [4th Dept 1986], *lv denied* 68 NY2d 608 [1986]). If a contract is barred by the statute of frauds, a promissory estoppel claim is viable in the limited set of circumstances where unconscionable injury results from the reliance placed on the alleged promise (*see Fleet Bank*, 290 AD2d at 796-797; *Melwani v Jain*, 281 AD2d 276, 277 [1st Dept 2001]; *Steele v Delverde S.R.L.*, 242 AD2d 414, 415 [1st Dept 1997]; *WE Transp. v Suffolk Transp. Serv.*, 192 AD2d 601, 602 [2d Dept 1993], *lv denied* 82 NY2d 656 [1993]; *Buddman Distribs. v Labatt Importers*, 91 AD2d 838, 839 [4th Dept 1982]).

Here, the allegations of the complaint show an unambiguous promise by Lisa to provide Peter with half of the income generated by the assets during the pendency of Peter's divorce, to transfer half of the assets upon the finality of the divorce, and to name Peter as sole beneficiary of a life insurance policy of at least $5 million. The complaint's allegations also show

---

5. Although a cause of action for promissory estoppel is not expressly asserted in the complaint, the factual allegations therein sufficiently "fit within" a promissory estoppel claim (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

that Peter detrimentally relied on those promises by paying a substantial amount in taxes for Madeline's estate, and suffered resulting monetary damages (*see Forman v Guardian Life Ins. Co. of Am.*, 76 AD3d 886, 888-889 [1st Dept 2010] [reading the complaint in a light most favorable to the plaintiffs, the pleadings sufficiently allege a clear and unambiguous promise, reliance on the promise and damages]).[6]

Further, triable issues of fact exist as to whether Peter has suffered the requisite unconscionable injury (*see Ackerman v Landes*, 112 AD2d 1081, 1083-1084 [2d Dept 1985]). At a minimum, Peter, who received nothing under Madeline's will, allegedly paid $2 million in estate taxes, expecting that he would later receive his share of the inheritance. To dismiss this claim as a matter of law would permit Lisa to keep all of the assets, which include a successful New York restaurant business, despite Peter's alleged substantial payment of the estate taxes (*see Buddman Distribs. v Labatt Importers*, 91 AD2d 838, 839 [4th Dept 1982] [whether circumstances rise to the level of unconscionable injury should not be determined on the pleadings]).

Lisa does not dispute that a promissory estoppel claim may lie even where an underlying contract is barred by the statute of frauds. Instead, she argues that public policy should bar Peter from any recovery because he entered into the alleged oral agreement for the purpose of delaying the receipt of the prospective assets until after the conclusion of the divorce action. Although "illegal contracts, or those contrary to public policy, are unenforceable" (*Szerdahelyi v Harris*, 67 NY2d 42, 48 [1986]), there is nothing illegal about the parties' agreement here. Madeline was free to leave her property to whomever she pleased, and the siblings were free to enter into an agreement to redistribute that inheritance.

Lisa does not identify any statute, rule or regulation that was violated by Peter and Lisa's entry into the agreement. Nor is there any claim that Peter concealed or transferred any property actually owned by him or titled in his name, either

---

**6.** On appeal, Peter asserts this figure is $2 million. Although the complaint does not explicitly set forth the $2 million figure, it does refer to a "significant financial expenditure." We note that an affidavit submitted in opposition to Lisa's dismissal motion characterizes the amount as "over a million dollars," and during oral argument before the motion court, Peter's counsel stated that the estate taxes paid by Peter amounted to $2 million.

before or during the divorce action. Indeed, the purported assets alleged to have been undisclosed, i.e., the shares in Whole Pies, were never within Peter's possession. At most, there is a claim that Peter attempted to delay the receipt of these shares, which he was never legally entitled to in the first place, and did not disclose this potential revenue source to his then-wife. While the failure to disclose Peter's right to receive the assets in the future may impact the financial issues in the matrimonial action, that factor alone does not require wholesale dismissal of Peter's claims on public policy grounds.

This case stands in contrast to the cases cited by Lisa, where courts invoked public policy principles to deny recovery where illegality was manifest (*see e.g. McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465, 470 [1960] [money the plaintiff sued for was the fruit of admitted crime]; *Anonymous v Anonymous*, 293 AD2d 406, 407 [1st Dept 2002] ["an agreement for financial support in exchange for illicit sexual relations is violative of public policy and thus unenforceable"]; *Abright v Shapiro*, 214 AD2d 496 [1st Dept 1995] [denying recovery where the parties were engaged in a scheme in violation of rent stabilization laws and zoning regulations]; *United Calendar Mfg. Corp. v Huang*, 94 AD2d 176, 180 [2d Dept 1983] [fee-splitting arrangement was, on its face, violative of the Education Law]; *Braunstein v Jason Tarantella, Inc.*, 87 AD2d 203 [2d Dept 1982] [dismissing claims with respect to distribution of a film that was produced in violation of obscenity statutes]).[7]

In invoking public policy, Lisa purports to be protecting Peter's ex-wife Rea from a fraud allegedly committed in the divorce action. To deny Peter recovery here, however, would do nothing to protect Rea, the alleged victim of the fraudulent scheme. Instead, Lisa, who allegedly participated in the fraud, would obtain a windfall by inheriting all of the assets, despite Peter's having allegedly paid $2 million in estate taxes. Such a perverse outcome would not serve any important public policy goals. If we were to accept Lisa's public policy argument, we

---

7. Lisa's reliance on *Reid v McLeary* (271 AD2d 668 [2d Dept 2000]) and *Gould v Gould* (261 App Div 733 [1st Dept 1941], *lv denied* 262 App Div 833 [1st Dept 1941]) is misplaced. In those cases, courts found agreements to be against public policy where the main objective was to dissolve a marriage and to facilitate the obtaining of a divorce. Here, the parties' alleged agreement does neither.

would be rewarding families who seek to secrete prospective assets from a soon-to-be ex-spouse, something we decline to do.

In reaching this decision, we do not condone parties in matrimonial actions being less than candid with their spouses about their assets. Peter's alleged fraudulent behavior, however, should be explored in the matrimonial action, but should not preclude him from moving forward with at least some of his claims here. In our earlier decision denying Rea leave to intervene in this action, we concluded that her remedy for any fraud committed during the course of the matrimonial proceeding was to move to vacate the divorce judgment (118 AD3d at 631-632). We note that the record here does not allow us to determine whether Peter intentionally concealed the alleged oral agreement from Rea, or what the legal significance of that would be. Nor can we make any determination whether or not Peter made any false statements during the divorce proceeding about his assets, including in his net worth statement.

Further, allowing Peter to recover in this action may provide Rea with the opportunity to reopen the divorce action to explore the circumstances surrounding Peter and Lisa's alleged oral contract. We recognize that an inheritance is generally considered to be separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]; Tatum v Simmons, 133 AD3d 550, 550 [1st Dept 2015]). However, in her intervenor complaint, Rea stated that if she had known that Peter would later receive half of the inheritance, she would have sought more when she settled her equitable distribution claims. Rea also maintained that the matrimonial court's awards of maintenance and child support would have been greater if the court had known of the alleged oral agreement.

■ The factual allegations of the complaint sufficiently state a cause of action for unjust enrichment with respect to Peter's payment of Madeline's estate taxes and Lisa's life insurance premiums. To establish unjust enrichment, the plaintiff must show that the defendant was enriched, at the plaintiff's expense, and that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered (Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012]). Here, the complaint's allegations show that Lisa was enriched at Peter's expense because Peter paid the estate taxes and insurance premiums, despite Lisa's being the sole beneficiary

of the will, and that it would be against equity and good conscience to allow Lisa to retain that windfall.[8]

This theory of unjust enrichment is not precluded by the statute of frauds because it is not an attempt to enforce the oral contract but instead seeks to recover the amount by which Lisa was enriched at Peter's expense (*see Grimes v Kaplin*, 305 AD2d 1024, 1024 [4th Dept 2003] [statute of frauds does not bar unjust enrichment cause of action where it does not seek to enforce a promise but rather seeks to recover the reasonable value of property or services rendered in reliance on the promise]; *Kearns v Mino*, 83 AD2d 606, 606 [2d Dept 1981] [upholding unjust enrichment claim despite dismissal of contract claim on statute of frauds grounds]; *see also Farash v Sykes Datatronics*, 59 NY2d 500, 503 [1983] [quasi contract claim may proceed where it did not attempt to enforce an oral agreement, but merely sought to recover expenditures made by the plaintiff in reliance upon statements made by and at the request of the defendant]).

For the reasons previously discussed, there is no merit to Lisa's contention that the unjust enrichment claim should be dismissed on public policy grounds. Peter's recovery on this claim, however, cannot extend to the benefits he was allegedly due under the oral agreement (*see Komolov v Segal*, 117 AD3d 557, 557 [1st Dept 2014] [precluding unjust enrichment claim because it sought same relief that was barred by the statute of frauds]; *Andrews v Cerberus Partners*, 271 AD2d 348, 348 [1st Dept 2000] [dismissing claim for unjust enrichment that was indistinguishable from breach of contract claim barred by statute of frauds]). To the extent the complaint alleges unjust enrichment based on Lisa's misuse of corporate monies, any such claim belongs to the companies, not Peter individually (*see Dragon Inv. Co. II LLC v Shanahan*, 49 AD3d 403, 404-405 [1st Dept 2008]).

The complaint alleges that Lisa owed Peter a fiduciary duty of care and loyalty, and that Lisa breached that duty in two

---

8. Although the unjust enrichment cause of action in the complaint does not expressly advance this theory, it does "repeat[ ] and reallege[ ]" all allegations set forth previously, including those showing that Peter made the tax payment even though he was not a beneficiary of the will. Given the liberal pleading standards and standard of review on a CPLR 3211 motion (*see Leon*, 84 NY2d at 87-88), Peter should be permitted to pursue this cause of action.

ways: by using the funds of Whole Pies for her own personal purposes, and by committing a host of improper acts, including failing to pay the company's sales and payroll taxes, filing a false insurance application, and operating John's Pizzeria in violation of numerous administrative regulations. To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary relationship, misconduct by the other party, and damages directly caused by that party's misconduct (*see Pokoik v Pokoik*, 115 AD3d 428, 429 [1st Dept 2014]).

■ The motion court properly dismissed the fiduciary duty claims because the complaint fails to allege that a fiduciary relationship existed between Peter and Lisa. Although Peter argues that he is owed a fiduciary duty as a "rightful" shareholder of Whole Pies, it is undisputed that he has no ownership interest in the company. Nor has he ever had any such interest in the past. Rather, the complaint states that 100% of the shares in Whole Pies were transferred to Lisa upon Madeline's death. Indeed, the complaint acknowledges that Peter entered into an agreement with Lisa specifically to forestall his becoming a shareholder.

Peter nevertheless argues that he would become a shareholder of Whole Pies if he were to prevail in this action. But the complaint seeks only monetary damages and contains no request for declaratory relief as to Peter's shareholder status. Nor did the now-dismissed breach of contract claims seek specific performance of Lisa's alleged promise to transfer the shares. In any event, even if Peter could somehow obtain shareholder status as a result of this lawsuit, that would not retroactively make him a shareholder for the time period when the alleged breaches of fiduciary duty took place.

Although not alleged in the complaint, on appeal, Peter contends that a fiduciary relationship exists based on his familial relationship as Lisa's sibling, along with unspecified prior business dealings. The mere fact that the parties are siblings, standing alone, is insufficient to support a fiduciary relationship (*see Chasanoff v Perlberg*, 19 AD3d 635, 635-636 [2d Dept 2005] [no fiduciary relationship between plaintiff sister and defendant brother]). Although family members in a co-owned business venture can owe each other fiduciary duties (*see Braddock v Braddock*, 60 AD3d 84, 88 [1st Dept 2009]),

the complaint contains no facts to suggest that Peter and Lisa had any business dealings.[9]

Even if a fiduciary relationship did exist, the claims that Lisa misappropriated Whole Pie's funds and failed to operate the company in compliance with the law belong to the company, not to Peter individually (*see Abrams v Donati*, 66 NY2d 951, 953 [1985]). Although not pleaded in the complaint, in his appellate brief, Peter argues that Lisa also breached her fiduciary duty by failing to transfer to him his purported interest in Whole Pies. These allegations merely duplicate one of the contract claims dismissed on statute of frauds grounds, and the requirement of a writing cannot be circumvented by recasting the claim as one sounding in tort (*see Pollak v Moore*, 85 AD3d 578, 579 [1st Dept 2011]; *Kaminer v Wexler*, 40 AD3d 405, 405 [1st Dept 2007], *lv dismissed in part and denied in part* 9 NY3d 955 [2007]).

The complaint contains two causes of action for an accounting, one for Whole Pies and the other for its management company. The right to an accounting is premised upon the existence of a fiduciary relationship (*Adam v Cutner & Rathkopf*, 238 AD2d 234, 242 [1st Dept 1997]). Since no fiduciary relationship is alleged, the accounting claims cannot stand (*see Royal Warwick S.A. v Hotel Representative, Inc.*, 106 AD3d 451, 452 [1st Dept 2013]). Nor has Peter alleged that he is a shareholder of either entity, which would give rise to the right to an accounting (*see Seretis v Fashion Vault Corp.*, 110 AD3d 547, 548 [1st Dept 2013], *lv denied* 22 NY3d 861 [2014]).

The motion court properly dismissed the conversion claim, which alleges that Lisa used the funds of Whole Pies and its management company for her own personal purposes. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 49-50 [2006]). The complaint fails to allege that Peter had any possessory interest in the corporate monies, and, in any event, such claim would belong to the

---

**9.** Peter's reliance on Rea's proposed intervenor complaint is unavailing. In that pleading, Rea alleges that in 1996, Peter began working toward opening John's Pizzeria, and provided initial funding for the venture. Simply because Peter may have helped to start John's Pizzeria 20 years ago sheds no light on whether Peter and Lisa subsequently had any business relationship, let alone the nature of any such dealings.

companies, not Peter individually (*see Ehrlich v Hambrecht*, 19 AD3d 259, 259 [1st Dept 2005]). To the extent Peter alleges that Lisa converted the funds Peter allegedly paid for Madeline's estate taxes, the complaint alleges no facts that would establish that Lisa exercised any control over such funds.

The claim for breach of the covenant of good faith and fair dealing fails, because there is no enforceable contract (*see Randall's Is. Aquatic Leisure, LLC v City of New York*, 92 AD3d 463, 463 [1st Dept 2012], *lv denied* 19 NY3d 804 [2012]; *Guarino v North Country Mtge. Banking Corp.*, 79 AD3d 805, 807 [2d Dept 2010]). Finally, the fraudulent inducement claim was properly dismissed because it alleges only an insincere promise of future performance under the oral contract (*see Forty Cent. Park S., Inc. v Anza*, 117 AD3d 523, 524 [1st Dept 2014]).

We have considered the parties' remaining contentions and find them unavailing.

Accordingly, the order of Supreme Court, New York County (Eileen A. Rakower, J.), entered July 11, 2014, as amended by the order of the same court and Justice, entered August 5, 2014, which granted defendant's motion to dismiss the complaint, should be modified, on the law, to deny the motion as to the claims for promissory estoppel, and unjust enrichment to the extent indicated herein, and otherwise affirmed, without costs.

TOM, J.P., SAXE and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered July 11, 2014, as amended by order, entered August 5, 2014, modified, on the law, the motion denied as to the claims for promissory estoppel, and unjust enrichment to the extent indicated, and otherwise affirmed, without costs.