## Lopez v Martini

2024 NY Slip Op 31982(U)

June 6, 2024

Supreme Court, New York County

Docket Number: Index No. 657018/2021

Judge: Judy H. Kim

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. JUDY H. KIM             PART            04

*Justice*

-----------------------------------------------------------------------X

GILBERTO LOPEZ,

                       Plaintiff,

                 - v -

ANDREW MARTINI, NEW YORK CAPITAL
TECHNOLOGIES, LLC,

                       Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 657018/2021 |
| MOTION DATE | 03/18/2022 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37

were read on this motion to                  DISMISS                 .

Upon the foregoing documents, defendants' motion seeking various preliminary injunctive relief is denied and is granted, in part, with respect to dismissal of plaintiff's complaint.

The following allegations are, unless otherwise noted, drawn from plaintiff's complaint and assumed to be true solely for purposes of this motion (See e.g., Grassi & Co. v Honka, 180 AD3d 564 [1st Dept 2020]). Lopez met defendant Andrew Martini, a member of defendant New York Capital Technologies, LLC ("NYCT") in early 2017. After this meeting, Martini hired Lopez to work for NYCT, building its website and working on marketing, branding, and search engine optimization as well as customer acquisition (NYSCEF Doc. No. 1 [Compl. at ¶¶10-11]). At an unspecified point in time, Martini promised Lopez a partnership stake in NYCT (Id. at ¶10). Thereafter, Lopez began paying for certain NYCT expenses, including hiring lawyers to review contracts with new clients, without seeking reimbursement "because he saw this as an investment in [NYCT]" (Id. at ¶16).

On April 5, 2019, Lopez and Martini signed a document stating:

In regard to New York Capital Technologies LLC Andrew Martini agrees to giving [sic] Gilberto Lopez Jr 49% company shares as of April 5, 2019. In the event of future shares being diluted or redistributed to bring in agreed upon partner(s) Gilberto Lopez Jr. Agrees it will come from his shares at a portion up to 10%. It is agreed that after that amount should there be a need for more than 10% shares the portion can be agreed upon to be diluted or redistributed to a prospective partner from Andrew Marini [sic] of his 51% shares at a portion of his own discretion

On or about July 25, 2020, however, Martini cut off Lopez's access to NYCT's administrative systems. Over a year later, in August 2021, Lopez requested that NYCT provide him with access to its books and records. NYCT denied this request on the grounds that Lopez was not a member of NYCT.

On December 16, 2021, plaintiff commenced this action asserting claims for: (1) unjust enrichment against NYCT; (2) promissory estoppel against Martini, individually; and (3) breach of fiduciary duty against Martini, individually, and seeking a declaratory judgment that Lopez has been a member of NYCT since April 5, 2019, an injunction barring Martini and NYCT from interfering with Lopez's rights as a member of NYCT, as well as an accounting of NYCT's books and records.

In their Answer, defendants acknowledge that Lopez worked for NYCT but maintain that Lopez was fully compensated for this work as a 1099 independent contractor. Defendants also agree that Martini raised the possibility of Lopez becoming a member of NYCT if Lopez brought in clients and "dramatically improved his performance" but maintain that he was never actually given a membership interest.[1] Instead, Martini ended NYCT's relationship with Lopez in the summer of 2020, after which Lopez changed the logins for NYCT's website, Google Analytics

---

[1] In an affidavit submitted in support of defendants' motion, Martini states that, under duress, he signed a piece of paper "acknowledging that [Lopez] could become a partner in the future" but that this document was not the April 5, 2019 agreement referenced in plaintiff's complaint (NYSCEF Doc. No. 8 [Martini Aff. at ¶8]).

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**
**Motion No. 001**

**Page 2 of 11**

2 of 11

[* 2]

and Cloudflare accounts and deleted other information from NYCT accounts. Lopez also began operating a website imitating NYCT's using the URL, nycapital-tech.com, nearly identical to NYCT's actual URL, nycapitaltech.com. Based upon these allegations, defendants assert counterclaims for tortious interference with prospective business relations, unfair competition, and conversion, and seek, as pertinent here, a declaratory judgment that Lopez is not a member of NYCT and a permanent injunction barring him from holding himself out as having a relationship with NYCT, including operating the website "nycapital-tech.com," or otherwise utilizing NYCT's name or logo.

Defendants now move for a preliminary injunction barring plaintiff from operating the website "nycapital-tech.com," utilizing NYCT's name or logo, or otherwise holding himself out as having a relationship with NYCT. Defendants also move to dismiss the complaint, on the basis that NYCT's Operating Agreement establishes that Lopez never became a member of NYCT such that he cannot assert a claim for breach of fiduciary duty and is not entitled to a declaratory judgment or accounting. They also argue that the complaint fails to state a claim for unjust enrichment or promissory estoppel.

In opposition, plaintiff argues that the Operating Agreement does not conclusively establish that he is not a member of NYCT because questions of fact must be resolved before the Court can determine which of the Operating Agreement's requirements for the addition of new members applied and if they were satisfied. Plaintiff also maintains that the complaint sufficiently sets out all the elements for unjust enrichment and promissory estoppel.

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**
**Motion No.  001**

**Page 3 of 11**

3 of 11

[* 3]

## DISCUSSION

### Preliminary Injunction

Defendants' application for a preliminary injunction is denied. A party seeking preliminary injunctive relief pursuant to CPLR §6301 must establish: "(1) a likelihood of success on the merits, (2) irreparable injury if provisional relief is not granted, and (3) that the equities are in his favor" (Marsh USA, Inc. v Alliant Ins. Services, Inc., 49 Misc 3d 1210(A) [Sup Ct, NY County 2015] citing J.A. Preston Corp. v. Fabrication Enterprises Inc., 68 NY2d 397, 406 [1986]).

As an initial matter, that branch of defendants' motion which seeks an order enjoining Lopez from operating the website "nycapital-tech.com" is denied as moot, as plaintiff has already taken the website down (See e.g., Rapaport v Diamond Dealers Club, Inc., 95 AD2d 743, 744 [1st Dept 1983]; Bd. of Managers of 1835 E. 14th St. Condominium v Singer, 186 AD3d 1477, 1478 [2d Dept 2020]). The remainder of defendants' motion—seeking an order barring plaintiff from using NYCT's name or logo, or otherwise holding himself out as having a relationship with NYCT—is denied; this is the ultimate relief sought by defendants in their Answer. "[A] mandatory preliminary injunction (one mandating specific conduct), by which the movant would receive some form of the ultimate relief sought as a final judgment, is granted only in unusual situations, where the granting of the relief is essential to maintain the status quo pending trial of the action" (Jones v Park Front Apts., LLC, 73 AD3d 612, 612 [1st Dept 2010] [internal citations and quotations omitted]). Defendants have not established that extraordinary circumstances or irreparable injury warrant such relief (See e.g., Emanuel Mizrahi, DDS, P.C. v Angela Andretta, DMD, P.C., 170 AD3d 1120 [2d Dept 2019] [trial court erred in issuing, sua sponte, a preliminary injunction enjoining defendants' from using "Forest Hills Orthodontics" trade name, including internet domain name]).

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**
Motion No.  001

**Page 4 of 11**

4 of 11

Dismissal

*Breach of Fiduciary Duty*

Defendants' motion, pursuant to CPLR §3211(a)(1), to dismiss plaintiff's causes of action for breach of fiduciary duty is denied. Defendants argue that NYCT's Operating Agreement establishes that plaintiff is not a member of NYCT and therefore not owed any fiduciary duties to support such a claim or entitle plaintiff to the declaratory judgment and accounting that he seeks.

On a CPLR §3211(a)(1) motion, "dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (Schmidt-Sarosi v Offices for Fertility and Reproductive Medicine, P.C., 195 AD3d 479, 480 [1st Dept 2021] [internal citations omitted]) and the Operating Agreement fails to do so.

The Operating Agreement submitted by NYCT provides, in pertinent part, as follows:

THIS OPERATING AGREEMENT is made and entered into effective September 28th. 2016, by and among: ANDREW MARTINI Gregory O. Lee Jr, [list the full legal names of the LLC members] (collectively referred to in this agreement as the "Members").

…

1.8 *Admission of Additional Members.* Except as otherwise expressly provided in this Agreement, no additional members may be admitted to the Company through issuance by the Company of a new interest in the Company without the prior unanimous written consent of the Members

…

2.1 *Initial Contributions.* The Members initially shall contribute to the Company capital as described in Schedule 2 attached to this Agreement

…

8.1 *Sale or Encumbrance Prohibited.* Except as otherwise permitted in this Agreement, no Member may voluntarily or involuntarily transfer, sell, convey, encumber, pledge, assign, or otherwise dispose of (collectively, "Transfer") an interest in the Company without the prior written consent of a majority of the other non-transferring Members determined on a per capita basis.

8.2 *Right of First Refusal.* Notwithstanding Section 8.1, a Member may transfer all or any part of the Member's interest in the Company (the "Interest") as follows:

8.2.1 The Member desiring to transfer his or her Interest first must provide written notice (the "Notice") to the other Members, specifying the price and terms on which the Member is prepared to sell the Interest (the "Offer").

8.2.2 For a period of 30 days after receipt of the Notice, the Members may acquire all, but not less than all, of the Interest at the price and under the terms specified in the Offer. If the other Members desiring to acquire the Interest cannot agree among themselves on the allocation of the Interest among them, the allocation will be proportional to the Ownership Interests of those Members desiring to acquire the Interest.

8.2.3 Closing of the sale of the Interest will occur as stated in the Offer; provided, however, that the closing will not be less than 45 days after expiration of the 30-day notice period.

8.2.4 If the other Members fail or refuse to notify the transferring Member of their desire to acquire all of the Interest proposed to be transferred within the 30-day period following receipt of the Notice, then the Members will be deemed to have waived their right to acquire the Interest on the terms described in the Offer, and the transferring Member may sell and convey the Interest consistent with the Offer to any other person or entity; provided, however, that notwithstanding anything in Section 8.2 to the contrary, should the sale to a third person be at a price or on terms that are more favorable to the purchaser than stated in the Offer, then the transferring Member must reoffer the sale of the Interest to the remaining Members at that other price or other terms; provided, further, that if the sale to a third person is not closed within six months after the expiration of the 30-day period describe above, then the provisions of Section 8.2 will again apply to the Interest proposed to be sold or conveyed.

8.2.5 Notwithstanding the foregoing provisions of Section 8.2, should the sole remaining Member be entitled to and elect to acquire all the Interests of the other Members of the Company in accordance with the provisions of Section 8.2, the acquiring Member may assign the right to acquire the Interests to a spouse, lineal descendent, or an affiliated entity if the assignment is reasonably believed to be necessary to continue the existence of the Company as a limited liability company.

8.3 *Substituted Parties.* Any transfer in which the Transferee becomes a fully substituted Member is not permitted unless and until:

(1) The transferor and assignee execute and deliver to the Company the documents and instruments of conveyance necessary or appropriate in the opinion of counsel

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**          **Page 6 of 11**
**Motion No.  001**

6 of 11

to the Company to effect the transfer and to confirm the agreement of the permitted assignee to be bound by the provisions of this Agreement; and

(2) The transferor furnishes to the Company an opinion of counsel, satisfactory to the Company, that the transfer will not cause the Company to terminate for federal income tax purposes or that any termination is not adverse to NYCT or the other Members.

(NYSCEF Doc. No. 17 [Operating Agreement] [emphasis added]).

Defendants argue that the plaintiff's complaint does not establish that the Operating Agreement's requirements for adding a member including, inter alia, a capital contribution from the new member and the prior written consent of current members.

In opposition, plaintiff submits an affidavit stating:

I have never known about or seen the alleged operating agreement that Defendants now claim exists. I doubt that it is still the operating agreement governing the Company as of today. The operating agreement lists a Gregory O. Lee Jr. as a 50% member of the Company. Upon information and belief, Gregory O. Lee Jr. is no longer a member of NYCT. Upon information and belief, prior to granting me a 49% interest, Andrew Martini was the sole member of the Company. Andrew Martini told me that Gregory O. Lee misappropriated funds from the Company; that it was an ordeal to remove him, but that he is long gone and that he had him removed as a member and from the paperwork of the LLC with the help of an attorney …

(NYSCEF Doc. No. 27 [Lopez Aff. in Opp. at ¶11]).

At oral argument, defense counsel conceded that the Operating Agreement was amended to remove Gregory O. Lee as a member (NYSCEF Doc. No. 37 [Tr. at pp. 14-15]). Accordingly, an issue of fact exists as to what version of the Operating Agreement was in effect during the period at issue, precluding dismissal based upon the submitted Operating Agreement (See Parekh v Cain, 96 AD3d 812, 815 [2d Dept 2012] [where disputed issues relating to the authenticity of the operating agreement remained, dismissal "was not warranted pursuant to CPLR §3211(a)(1)"]). However, even assuming that this was the operative Operating Agreement, as the questions of whether Gregory O. Lee was a member during the period at issue remains unresolved,

the complaint's allegations that plaintiff worked for NYCT and that Martini, its sole member, granted plaintiff a membership interest in NYCT are sufficient to raise an issue of fact as to whether the Operating Agreement's requirements for the admission of new members were waived by Martini (See Sherman v Zampella, 214 AD3d 545 [1st Dept 2023]; see also Laurel Hill Advisory Group, LLC v Am. Stock Transfer & Tr. Co., LLC, 112 AD3d 486 [1st Dept 2013] [inconsistent terms between operating agreement and alleged oral agreement in which plaintiff was granted membership interest in LLC raised factual issues that could not be resolved on motion to dismiss]).

Neither is the Court persuaded by defendants' arguments that this claim must be dismissed as against Martini because the allegations in the complaint relate to actions taken in his corporate capacity. To state a claim for breach of fiduciary duty, plaintiff must allege "the existence of a fiduciary relationship, misconduct by the other party, and damages directly caused by that party's misconduct" (Pokoik v Pokoik, 115 AD3d 428, 429 [1st Dept 2014]). Taking the complaint's allegations as true, Martini's fiduciary duty "runs to plaintiff as a member of the LLC" (Shatz v Chertok, 180 AD3d 609 [1st Dept 2020]) and plaintiff's allegations that Martini denies plaintiff access to NYCT's books and records and failed to make distributions to or share profits with Lopez sufficiently alleges self-dealing and misconduct by Martini to support this claim (See e.g., Hausen v N. Fork Radiology, P.C., 171 AD3d 888, 892 [2d Dept 2019] ["allegations that the other shareholders and board members of the radiology corporations purposefully excluded the plaintiff from shareholder meetings and denied her all access to financial information" stated breach of fiduciary duty claim]).

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**
**Motion No.  001**

**Page 8 of 11**

8 of 11

*Promissory Estoppel*

Defendants' motion, pursuant to CPLR §3211(a)(7), to dismiss plaintiff's promissory estoppel claim against Martini is granted. "The elements of a promissory estoppel claim are: (i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance" (Castellotti v Free, 138 AD3d 198, 204 [1st Dept 2016] [internal citations omitted]). Plaintiff's allegations that Martini promised Lopez that he would be a member of NYCT and that, in reliance on this promise, Lopez performed work for NYCT without reasonable compensation does not satisfy this standard—the complaint's reference to "reasonable" compensation concedes that plaintiff was, in fact, paid for this work (See The Laurel Hill Advisory Group, LLC v Am. Stock Transfer & Tr. Co., LLC, 2012 NY Slip Op 33461[U] [Sup Ct, NY County 2012] aff'd as mod sub nom. Laurel Hill Advisory Group, LLC v Am. Stock Transfer & Tr. Co., LLC, 112 AD3d 486 [1st Dept 2013] [allegations that counterclaim plaintiff left job to work for counterclaim defendant LLC based on promise that he would have a ten percent interest in that LLC failed to state a claim for promissory estoppel where his only contribution in exchange for membership interest was work for which he was compensated by the LLC with a salary]). To the extent plaintiff also alleges that he paid certain NYCT expenses without seeking reimbursement, the complaint indicates that this was something he did based on his emotional investment in the company rather than as a precondition for him becoming a member. As such, these amounts are properly sought through plaintiff's unjust enrichment claim.

*Unjust Enrichment against NYCT*

Defendants' motion to dismiss plaintiff's unjust enrichment claim is denied. To establish a claim for unjust enrichment, plaintiff "must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**
**Motion No.  001**

**Page 9 of 11**

9 of 11

retain what is sought to be recovered" (Auction House 43, Inc. v Koblence, 67 Misc 3d 1209(A) [Sup Ct, NY County 2020] [internal citations omitted]). Here, plaintiff pleads that he devoted significant time to NYCT and arranged for business opportunities for NYCT without receiving reasonable compensation and paid certain business expenses without being reimbursed. Contrary to defendants' characterization, these claims are sufficiently particularized (See e.g., PF2 Sec. Evaluations, Inc. v Fillebeen, 171 AD3d 551, 552 [1st Dept 2019] [unjust enrichment claim based on allegations that counterclaim defendants underpaid counterclaim plaintiff for shares in company and failed to compensate him for computer models he developed was pled with requisite specificity]).

Defendants' efforts to rebut these allegations with an unauthenticated spreadsheet and an email from Lopez discussing an appropriate fee for work performed are unavailing, as this material is not documentary evidence appropriate for a CPLR §3211(a)(1) motion (See e.g., Johnson v Asberry, 190 AD3d 491, 492 [1st Dept 2021]). The Court also rejects defendants' argument that plaintiff's unjust enrichment claim is time-barred to the extent he seeks to recover NYCT expenses he paid in mid-2017 and early 2018. "The statute of limitations on an unjust enrichment claim begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution" (Ingrami v Rovner, 45 AD3d 806, 808 [2d Dept 2007] [internal citations omitted]) which, in this case, is the alleged August 2021 denial of plaintiff's membership in NYCT (See e.g., Zucker v Waldmann, 43 Misc 3d 1233(A) [Sup Ct, Kings County 2014] [where plaintiff invested in business venture to develop real property, unjust enrichment claim accrued when defendants failed to develop the property within a reasonable time or respond to plaintiff's request for written accounting]). As such, this claim was brought within the six-year statute of limitations for unjust enrichment claims (See e.g., Simon v FrancInvest, S.A., 192 AD3d 565, 567 [1st Dept 2021]).

**657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL**                                    **Page 10 of 11**
**Motion No.  001**

[* 10]                                                10 of 11

In light of the foregoing, it is

**ORDERED** that defendants' motion to dismiss the complaint is granted to the limited extent that plaintiff's claim for promissory estoppel is hereby dismissed, and is otherwise denied; and it is further

**ORDERED** that defendants' request for a preliminary injunction is denied; and it is further

**ORDERED** that plaintiff shall, within ten days of the date of this decision and order, serve a copy of this decision and order, with notice of entry, upon defendants as well as the Clerk of the Court (60 Centre St., Room 141B) and the Clerk of the General Clerk's Office (60 Centre St., Rm. 119); and it is further

**ORDERED** that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on this court's website at the address www.nycourts.gov/supctmanh); and it is further

**ORDERED** that the parties are to appear for a preliminary conference in Part 4 (80 Centre Street, room 308) on August 16, 2024 at 10:00 a.m.

This constitutes the decision and order of the Court.

| | 6/6/2024 | | | | HON. JUDY H. KIM, J.S.C. | |
|---|---|---|---|---|---|---|
| | **DATE** | | | | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | ☐ DENIED | X | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

657018/2021   LOPEZ, GILBERTO vs. MARTINI, ANDREW ET AL
Motion No.  001

Page 11 of 11

11 of 11